**UNITED STATES of America, Appellee,**

v.

**Riad Youssef RAHME,**
**Defendant-Appellant.**

**No. 579, Docket 86–1355.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 18, 1986.
Decided March 5, 1987.

Nicholas M. De Feis, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for E.D.N.Y., Emily Berger, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Stanley Neustadter, New York City, for defendant-appellant.

Before TIMBERS, MESKILL and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Riad Youssef Rahme appeals from a judgment of the United States District Court for the Eastern District of New York, entered after a jury trial before Joseph M. McLaughlin, *Judge*, convicting him

on one count each of conspiring to distribute heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846 (1982 & Supp. II 1984); importing heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(A) (1982 & Supp. II 1984); and possessing heroin with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) (1982 & Supp. II 1984). Rahme was sentenced to three concurrent 10–year terms of imprisonment and a special assessment of $150. On appeal, he contends principally that the district court erred in denying his motion to suppress certain evidence seized in a warrantless search and in admitting at trial testimony concerning statements made by an alleged coconspirator. Finding no merit in his contentions, we affirm the judgment of conviction.

## I. BACKGROUND

The facts as found by the district court in denying Rahme's motion to suppress do not appear to be in substantial dispute. On February 20, 1986, Rahme and two codefendants, George Issa and Youssef Boutros, went to a hotel at LaGuardia Airport where Issa negotiated a narcotics transaction with an undercover agent of the United States Drug Enforcement Agency ("DEA"). When Boutros removed a quantity of heroin from his shoes, he, Issa, and Rahme were arrested.

During a search incident to the arrests, a key to Room 418 at the Travel Inn Hotel in Manhattan was found in the possession of Rahme. Boutros and Rahme told DEA agents they had been sharing that room. The agents apparently made no effort to seek evidence at the hotel until several days later.

In the meantime, on February 21, 1986, when no one had reserved or paid for another night in Room 418 by the noon checkout time, the Travel Inn's security manager, Jack Grant, went to the room, knocked on the door, and, hearing no response, opened it with a passkey. Upon entering and seeing luggage, Grant left the room intact but plugged the lock so that no one, including the former occupants, could enter without going to the hotel desk first.

On February 22, the hotel having heard nothing further from Room 418's last occupants, Grant returned to the room with two maids. The luggage there included a blue suitcase with Rahme's name on it, lying open on the bed, and a black briefcase in a dresser drawer. All of the luggage was removed from the room and locked in the hotel's storage area.

On February 24, 1986, when DEA Special Agent Beatrice Leone contacted the hotel seeking records as to whether Rahme or Boutros had stayed there, she was informed that the hotel had taken possession of the luggage found in Room 418. Leone informed Grant that Rahme and Boutros had been arrested, and she was given permission to take the luggage. In a DEA inventory search, the black briefcase was found to contain a number of documents and a small amount of heroin; the blue suitcase bearing Rahme's name was found to contain documents of evidentiary value. At no time prior to the DEA's seizure of the luggage had Rahme, personally or through a representative, attempted to pay the overdue room rent or to retrieve the luggage left in Room 418.

The district court rejected Rahme's contention that the warrantless seizure and search of the two bags violated his rights under the Fourth Amendment, ruling that Rahme lacked standing to challenge the legality of the search and seizure. Relying on *United States v. Cowan*, 396 F.2d 83 (2d Cir.1968), the court held that Rahme had no privacy interest in the seized items because he had failed to pay the required rent on the room, and hence the bags were lawfully in the possession of the hotel pursuant to its lien for unpaid rent under N.Y. Lien Law § 181 (McKinney 1966). The district court held, alternatively, that even if Rahme had a privacy interest in the seized items, it was one shared with the hotel and that the hotel had the power to consent to the search on behalf of both. Accordingly, the government was permitted to introduce into evidence against Rahme the two bags and certain of their contents.

After the arrests, Boutros and Issa had pleaded guilty to charges against them;

only Rahme went to trial. The evidence at trial included the testimony of Issa that Boutros had stated to him on February 17, 1986, and on February 20, 1986, that the source for the heroin Boutros would supply to Issa was "Rahme's family" or "the Rahme people." Issa testified that on the latter occasion Boutros also told Issa not to tell Rahme that Issa knew Rahme was the source.

The jury found Rahme guilty on the possession, importing, and conspiracy counts and he was sentenced as indicated above.

On appeal, Rahme challenges the correctness of the district court's denial of the suppression motion and contends that Issa's testimony as to Boutros's statements should have been excluded. We find no merit in either argument.

## II.  DISCUSSION

### A.  *The Search and Seizure Claim*

■ In order to prevail on a contention that a search violated the Fourth Amendment, an accused must show that he had a legitimate expectation of privacy in a searched place or item. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). Ownership of the searched item, though a fact to be considered, is neither in itself sufficient to establish a legitimate expectation of privacy nor a substitute if the requisite legitimate expectation of privacy is lacking. *Id.* at 105–06, 100 S.Ct. at 2561–62; *United States v. Salvucci,* 448 U.S. 83, 90 n. 5, 91, 100 S.Ct. 2547, 2552 n. 5, 2553, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois,* 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978). Even possession does not itself establish a legitimate expectation of privacy. *See United States v. Salvucci,* 448 U.S. at 91–93, 100 S.Ct. at 2552–54. The absence of possession, however, may often result in a finding that an accused had no legitimate expectation of privacy because the absence of a right to exclude others from access is an important factor militating against a legitimate expectation of privacy. *See Rawlings v. Kentucky,* 448 U.S. at 105, 100 S.Ct. at 2561; *Rakas v. Illinois,* 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12.

■ Applying these principles, we have held that when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession. *United States v. Parizo,* 514 F.2d 52, 54–55 (2d Cir.1975); *United States v. Cowan,* 396 F.2d 83, 86–87 (2d Cir.1968); *accord United States v. Rambo,* 789 F.2d 1289, 1295–96 (8th Cir.1986); *United States v. Akin,* 562 F.2d 459, 464 (7th Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *United States v. Haddad,* 558 F.2d 968, 975 (9th Cir.1977); *United States v. Croft,* 429 F.2d 884, 887 (10th Cir.1970); *cf. Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960) (when defendant vacated room and hotel took exclusive possession, government agent's search of items left behind, with the consent of the hotel, was not wrongful). This rule applies even when the accused retains significant property interests in the seized item or place. For example, we have held that once the guest's access to the room is no longer his "exclusive right," he has no legitimate expectation of privacy in the room even though he himself still has access. *United States v. Parizo,* 514 F.2d at 55; *cf. United States v. Rambo,* 789 F.2d at 1295–96 (rule applied when rental period had expired even though defendant remained in possession of the room).

*United States v. Cowan* is virtually on all fours with the present case. There Cowan failed to pay for his hotel room for five days, and the hotel plugged the lock on the room and later removed his luggage to the hotel office. When a law enforcement agent went to the hotel looking for Cowan as a suspect in an investigation, the hotel told the agent about the luggage and gave the luggage to him. We affirmed the district court's denial of Cowan's motion to suppress the evidence found in the luggage on the ground that Cowan had lost his right to privacy in the luggage by leaving it in his room and failing to pay the room bill. Noting that N.Y. Lien Law § 181 gave the hotel the right, in the circum-

stances, to retain and sell Cowan's luggage, we stated that "whatever Cowan's rights to reclaim the luggage might be under New York Law," Cowan's privacy was not invaded because "the hotel, not Cowan, was entitled to retain possession at the time when the baggage was seized." 396 F.2d at 87.

Rahme argues that *Cowan*, a 1968 decision, is no longer good law because in *Blye v. Globe-Wernicke Realty Co.*, 33 N.Y.2d 15, 347 N.Y.S.2d 170, 300 N.E.2d 710 (1973), § 181 was held, in part, unconstitutional, thereby curtailing the rights of the hotel. This argument has no merit. In *Blye*, the New York Court of Appeals held that § 181 violated the state constitution insofar as it permitted the hotel to sell the guest's property without notice and an opportunity to be heard. This decision established prerequisites prior to which a hotel guest could not be permanently deprived of his property; it did not purport to deal with his expectations of privacy. Thus, the New York cases decided after *Blye* reveal that the right of the hotel to retain the defaulting guest's luggage prior to any notice, hearing, or sale, remains intact. *See People v. Lerhinan*, 90 A.D.2d 74, 77 & n. 4, 455 N.Y.S.2d 822, 825 & n. 4 (2d Dep't 1982); *People v. Rodriguez*, 104 A.D.2d 832, 833–34, 480 N.Y.S.2d 155, 156 (2d Dep't 1984); *see also Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 161, 408 N.Y.S.2d 39, 45, 379 N.E.2d 1169, 1174 (1978) (garagemen's seizure of possession pursuant to statutory lien is not state action and therefore not a violation of due process); *cf. Blye v. Globe-Wernicke Realty Co.*, 33 N.Y.2d at 21–22 & n. 4, 347 N.Y.S.2d at 176–77 & n. 4, 300 N.E.2d at 714–15 & n. 4. Once the hotel, in a position adverse to the guest, properly takes possession of the luggage, the guest no longer has the right to control access to it and can have no legitimate expectation of privacy in it.

We find no greater merit in Rahme's contention that he retained his full expectation of privacy in the left luggage because he was under arrest when he defaulted on the rent due for Room 418 and could not return to the room. The reason for a guest's nonpayment of room rent does not affect the hotel's right to retain the luggage. Further, when a defendant has been arrested, it was presumably his "own conduct that prevented his return to the [h]otel." *United States v. Croft*, 429 F.2d at 887; *accord United States v. Lewis*, 400 F.Supp. 1046, 1049 (S.D.N.Y.1975); *see also, e.g., United States v. Akin*, 562 F.2d at 464; *United States v. Haddad*, 558 F.2d at 975; *cf. United States v. Parizo*, 514 F.2d at 54 (defendant was under arrest at time of search). Certainly there is no contention here that the DEA agents, who had ample probable cause for the arrest, had held Rahme in custody in order to undertake a warrantless search.

In sum, we conclude that the district court properly held that the hotel's lawful, exclusive, and adverse possession of the briefcase and blue suitcase deprived Rahme of any legitimate expectation of privacy in those articles.

### B  *The Coconspirator's Statements*

Issa's testimony that Boutros had twice told him that Rahme's people were the source of the 650 grams of heroin that Boutros would sell to Issa was admitted in evidence pursuant to Fed.R.Evid. 801(d)(2)(E) as the statements of a coconspirator in furtherance of the conspiracy. Rahme contends that Boutros's alleged statements could not properly be deemed "in furtherance" of the conspiracy and that the statements bore insufficient indicia of reliability to protect his Sixth Amendment right to confront witnesses against him. We find no merit in either contention.

#### 1.  *"In Furtherance"*

Statements by a coconspirator are in furtherance of the conspiracy within the meaning of Rule 801(d)(2)(E) if they prompt the listener to respond in a way that facilitates the carrying out of criminal activity. *See United States v. Katsougrakis*, 715 F.2d 769, 778 (2d Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). Hence, "[s]tatements between conspirators which provide reassurance, serve

to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy ...," *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983), as do statements that apprise a coconspirator of the progress of the conspiracy or that seek to induce a coconspirator's assistance, *United States v. Paone*, 782 F.2d 386, 391 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986). It is sufficient, therefore, if the listener is told with whom he will be working. *United States v. Perez*, 702 F.2d 33, 37 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2457, 77 L.Ed.2d 1336 (1983); *see also United States v. Handy*, 668 F.2d 407, 408 (8th Cir.1982) (statement of one coconspirator identifying another is in furtherance of conspiracy). As the "in furtherance" issue essentially involves a question of fact, we will not reverse the district court's finding unless it is clearly erroneous. *See United States v. DeLuna*, 763 F.2d 897, 909 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *see also United States v. Tille*, 729 F.2d 615, 620 (9th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984).

The district court's finding that the statements attributed to Boutros were in furtherance of the conspiracy was entirely reasonable. There was evidence that Boutros and Issa had been trying to put together their heroin deal for approximately two weeks. Boutros's identification of a specific source, especially in his February 17 statement, made prior to the parties' agreement on all of the details of the transaction, may reasonably be interpreted as an attempt to reassure Issa that Boutros's ability to produce heroin in the quantity he claimed was concrete rather than speculative. Indeed, Issa, thus reassured, soon thereafter told the undercover DEA agent with whom he dealt that Issa had 650 grams of heroin "immediately on hand." Further, both the February 17 statement and the February 20 statement may reasonably be viewed as efforts by Boutros to reassure Issa that the presence of Rahme at the time of the heroin transfer would present no danger to Issa.

Accordingly, we conclude that the district court did not err in admitting the evidence of Boutros's statements as having been made in furtherance of the conspiracy.

### 2. *Indicia of Reliability*

Rahme's contention that the statements attributed to Boutros bore insufficient indicia of reliability to protect Rahme's Sixth Amendment right to confrontation need not detain us long. We have held that the reliability of such out-of-court declarations is adequately established where there is sufficient nonhearsay evidence that (1) there existed a conspiracy of which both the defendant and the declarant were members at the time the statement was made, (2) the statement was in furtherance of the conspiracy, and (3) the declaration as a whole was against the declarant's penal interest. *See, e.g., United States v. Paone*, 782 F.2d at 391–92; *United States v. Perez*, 702 F.2d at 36–37; *United States v. Paoli*, 603 F.2d 1029, 1036 (2d Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 264, 62 L.Ed.2d 182 (1979). These criteria were satisfied here.

The evidence at trial, viewed in the light most favorable to the government, showed that a few days after Boutros, in New York, telephoned Issa in Texas to advise him that Boutros had heroin to sell, Rahme arrived in the United States. On the next day, February 9, 1986, Rahme and Boutros were in Texas, where they stayed at a hotel together for two days. When Boutros again reached Issa, he was told to return to New York, where Issa would see him when convenient. Issa next reached Boutros at the Travel Inn Hotel in New York, where Boutros and Rahme were staying; Rahme translated the conversation for Boutros, who apparently did not speak English. Rahme accompanied Boutros in all of his meetings with Issa. At the final meeting among Boutros, Issa, and the undercover DEA agent, Rahme accompanied Boutros but sat at a separate table. However, when the other three left to consummate

the transaction in the parking lot, Rahme got up from his seat and left the lounge, and watched the three walk down the corridor and out of the hotel. Upon their arrests, Issa was found to have a piece of paper with Rahme's nickname written on it; Rahme was found to have a piece of paper with Issa's Texas telephone number on it. Taken as a whole, the nonhearsay evidence was sufficient to establish that Rahme and Boutros were coconspirators in the attempted sale of heroin to Issa.

As discussed in Part II.B.1. above, the Boutros statements could properly be viewed as furthering the conspiracy. And plainly Boutros's discussion of his source for heroin was against his penal interest. *See, e.g., United States v. Paoli*, 603 F.2d at 1035–36 (coconspirator's statement that his "connection"—the defendant—"was very, very careful because he had just completed a $50,000 heroin deal in Miami" was against coconspirator's penal interest).

▮ In sum, the statements attributed to Boutros by Issa possessed the requisite indicia of reliability and were properly admitted. We see no merit in Rahme's contention that the district court improperly curtailed the cross-examination of Issa. The permissible scope and extent of cross-examination lie within the discretion of the trial judge. *See United States v. Lanza*, 790 F.2d 1015, 1020 (2d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986); *United States v. Singh*, 628 F.2d 758, 763 (2d Cir.) (affirming disallowance of cross-examination into how long government held witness in custody), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980). The court permitted cross-examination into the facts that Issa had entered into a cooperation agreement with the government, that certain charges were to be dropped against him if he testified truthfully, and that he had not disclosed the statements allegedly made by Boutros until the time of his entry into the cooperation agreement. It was not an abuse of discretion to refuse to permit questioning as to the maximum sentence Issa could have expected to receive in the absence of a cooperation agreement.

## CONCLUSION

We have considered all of Rahme's arguments on this appeal and have found them to be without merit. The judgment of conviction is affirmed.