COMMONWEALTH *vs.* JOSEPH D. BRASS.

No. 96-P-481.

Plymouth. November 7, 1996. - January 23, 1997.

Present: BROWN, IRELAND, & LENK, JJ.

*Search and Seizure,* Hotel room, Expectation of privacy. *Constitutional Law,* Search and seizure.

A defendant charged with violations of G. L. c. 269, §§ 10 and 11C, did not demonstrate that he had a reasonable expectation of privacy in a hotel room in which he remained after checkout time after his rental period had terminated, and his constitutional rights were not violated by police officers' warrantless entry into the room and seizure of the firearm [89-92]; moreover, in the circumstances, the hotel room was not the defendant's "residence" for purposes of G. L. c. 269, § 10(*a*)(1) [92]. BROWN, J., concurring.

COMPLAINTS received and sworn to in the Brockton Division of the District Court Department on May 14, 1991.

On transfer to the Stoughton Division a pretrial motion to suppress evidence was heard by *Francis T. Crimmins,* J., and, on retransfer to the Brockton Division, the case was heard by *Mary Ann Driscoll,* J.

*Richard F. Linehan* for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant appeals from convictions after a jury-waived trial in the District Court of unlawfully carrying a firearm and possessing a firearm with an altered serial number. He claims that his constitutional rights were violated when police officers made a warrantless entry into his hotel room, where they found a nine millimeter handgun and loaded ammunition clip.

After the judge denied the defendant's motion to suppress, the case was tried upon stipulated facts as set forth in a police

report. According to that report, the hotel manager went to room 208, from which the defendant and a companion were supposed to have checked out earlier but had not. He knocked at the door but got no answer. He used a key and unlocked the door but found the door chain attached from the inside. He then heard "strange noises" inside the room, became concerned for the occupants' health, and called the fire department. A local fire department official or officials (the report does not specify) and the hotel manager looked in on the occupants of the hotel room (including the defendant), who, at this point, had remained well beyond checkout time. They believed that the occupants were or had been using drugs but that they were "in no immediate danger." The fire department official spotted a handgun and loaded magazine on the bedstand in the room and called the police. The responding officers knocked on the hotel room door, but heard no response. After waiting several moments, they unlocked the door with a pass key and entered the room. They observed the defendant and a female who both appeared "a little groggy." When questioned about a gun, the defendant stated that one could be found under the mattress. One of the officers looked there and located a gun and a loaded magazine for which the defendant had no license or identification card. The gun had an altered serial number. The defendant was charged and placed under arrest.

The defendant claims, first, that the warrantless entry into his hotel room by police was not justified by the exigent circumstances exception to the general requirement for a warrant. See *Michigan* v. *Tyler*, 436 U.S. 499 (1978). The Commonwealth counters that the defendant did not have a reasonable expectation of privacy while he continued to occupy the hotel room well beyond checkout time. Consequently, according to the Commonwealth, no entry or search occurred in the constitutional sense. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). The burden was on the defendant to show a legitimate, continuing expectation of privacy on his part while he remained in the room after the rental period had ended. *Ibid.*, citing *Commonwealth* v. *Mamacos*, 409 Mass. 635, 638 (1991).

The Supreme Judicial Court, by way of dictum, has restated the generally accepted rule that a person who stays over in a hotel or motel room "after his rental period has terminated"

has lost any reasonable expectation of privacy in the room that he may once have had. *Commonwealth* v. *Paszko*, 391 Mass. 164, 185 (1984), quoting from *United States* v. *Jackson*, 585 F.2d 653, 658 (4th Cir. 1978) (denim jacket left by defendant in hotel room after he had abandoned the room was legitimately seized after the rental period ended, *id*. at 185-186.) Stated in a similar way, "A guest in a motel has no reasonable expectation of privacy in a room after the rental period has expired." *United States* v. *Huffhines*, 967 F.2d 314, 318 (9th Cir. 1992).

The rule has been consistently applied whether, as here, the motel guest was physically present after checkout time in the room at the time entry was made, *United States* v. *Larson*, 760 F.2d 852 (8th Cir.), cert. denied, 477 U.S. 849 (1985); *Sumdum* v. *State*, 612 P.2d 1018 (Alaska 1980); *State* v. *Ahumada*, 609 P.2d 586 (Ariz. App. 1980); or, in the more typical case, where, at the time entry was made, the motel guest either was not physically present, or had actually vacated the room, leaving behind luggage or other belongings. See *United States* v. *Parizo*, 514 F.2d 52 (2d Cir. 1975); *United States* v. *Ramirez*, 810 F.2d 1338, 1341 (5th Cir.), cert. denied, 484 U.S. 844 (1987); *United States* v. *Rahme*, 813 F.2d 31, 33, 34 (2d Cir. 1987); *United States* v. *Huffhines*, 967 F.2d at 316, 318; and *State* v. *Kirksey*, 647 S.W. 2d 799, 802 (Mo. 1983). See also 1 LaFave, Search and Seizure § 2.3(a), at 469-471 (3d ed. 1996).

In *Sumdum* v. *State*, 612 P.2d 1018, the defendant was identified by another motel guest as a possible burglary or larceny suspect. The identification occurred well after the posted checkout time. *Id*. at 1020. The motel manager was alerted to the theft and summoned the police. *Ibid*. The motel manager then telephoned the defendant's room and received no answer, whereupon, she went to the room in the company of two police officers, knocked at the door, and, again, received no response. The manager then opened the door with a pass key. From the doorway, the police could see the defendant in the room asleep, but observed on his outstretched wrist a watch which the other motel guest immediately identified as his property. The defendant was arrested and charged. The court acknowledged that a motel room door "presents a firm constitutional barrier," *id*. at 1020, but concluded that the motel manager could justifiably open the door and make

entry after the rental period had terminated in order to determine whether the guest had vacated the room, *id.* at 1021-1022. Moreover, that right was not altered by the presence of two police officers who observed in plain view the objects of criminal activity. *Id.* at 1022.

In *State* v. *Ahumada,* 609 P.2d 586, a motel manager notified police that a room guest had stayed over several hours beyond checkout time without paying or reregistering for the room for an extra day. *Id.* at 587. Accompanied by police officers, a motel security guard went to the defendant's room, knocked repeatedly, but received no response. *Ibid.* Finally, the security guard opened the door. The officers entered and found the defendant asleep. Awakened, the defendant was told by the officers that he would either have to pay or vacate the room. The defendant indicated he would pay, and began looking through his wallet. The officers then spotted drug paraphernalia and heroin lying on a table and arrested the defendant. *Ibid.* Later, at the station, the defendant told the police that a large amount of marihuana and cash could be found under the mattress in the motel room.

The court concluded that no constitutional violation had occurred. "At the conclusion of the rental period, the guest no longer [had] the right to use the room and [had] lost any privacy associated with it." *Id.* at 588 (citations omitted). The court specially noted that, after checkout time, the motel manager or his authorized agents (here, the police officers) could enter the room. *Ibid.*

We see slight difference between the situations in *Sumdum* and *Ahumada* and the situation here. Because the defendant had no expectation of privacy in any constitutional sense, the police (or a hotel employee) could enter. It makes little difference, too, that, in response to questioning by the officer, the defendant, in essence, invited the officer to look under the mattress for the possible objects of crime; the motel manager could have done or authorized the same. See *United States* v. *Parizo,* 514 F.2d at 54 (after checkout time, manager of motel may enter room, consent to search of room, or seize items found).

The defendant failed to meet his burden of showing he had a reasonable expectation of privacy in the room through evidence, for example, that he had either reregistered or been billed for continued occupancy of the room. Contrast with

*United States* v. *Mulder,* 808 F.2d 1346 (9th Cir. 1987) (defendant was billed on his credit card after staying beyond reserved one-day stay; consequently, defendant did not abandon bag containing illegal drugs found in his hotel room and later searched by police).

The result we reach is reasonable. Were we to hold otherwise, a defendant could create a bubble of constitutional protection for himself simply by holding over in a motel or hotel room hours after checkout time until being physically ejected from the room. Our holding is intended to apply only to transient, temporary quarters such as hotel, motel, or guest quarters generally occupied under a license. We reserve the question whether the same result should apply to a holdover tenant in more permanent quarters.

Because the defendant's rights under the Fourth Amendment to the Federal Constitution were not implicated, we need not decide whether exigent circumstances existed. The motion to suppress was properly denied. We also need not decide whether a person's hotel or motel room may serve as a residence, thus obviating criminal liability under G. L. c. 269, § 10, as amended through St. 1990, c. 511, §§ 2 & 3, for unlawfully carrying a firearm. Because the defendant no longer had a legitimate interest in the hotel room, it could not have been his residence. The judge, therefore, properly denied the defendant's motion for a required finding of not guilty.

*Judgments affirmed.*

BROWN, J. (concurring). I concur, albeit reluctantly, because of the peculiar circumstances presented here. Motel managers (not the police) have the right, upon knocking and hearing no response, to enter a guest room a reasonable time after a clear and unambiguous indication that the guest no longer desires or can afford to stay for an additional period of time. However, there is, in my view, no permissible basis to justify entrance into a motel room, absent clear evidence of abandonment, by police officers who do not possess a properly executed warrant. Most assuredly, the officers cannot upon

entrance immediately commence interrogation of the oc-
cupants.[1]

This is a close case, and should be limited to its particular
facts. The two cases most heavily relied upon by the majority
require a very generous gloss be placed upon the "plain view"
doctrine, an ingredient conspicuously absent here.

---

[1] I pass the question whether the warnings mandated by *Miranda* v.
*Arizona*, 384 U.S. 436, 478-479 (1966), are applicable to the instant circum-
stances.