2001 UT App 3

**STATE of Utah, Plaintiff and Appellee,**

v.

**Leslie Gene LOYA, Defendant and Appellant.**

No. 20000034–CA.

Court of Appeals of Utah.

Jan. 5, 2001.

Joan C. Watt and Ronald S. Fujino, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Jan Graham and Karen A. Klucznik, Assistant Attorney General, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., JACKSON, Associate P.J., and BILLINGS, J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant appeals the trial court's denial of her motion to suppress, which led to her conviction for possession of a forged device. Defendant argues her Fourth Amendment rights were violated when police conducted a warrantless search of a motel room. Defendant claims she had a reasonable expectation of privacy in the room even though she remained after the check out time. We affirm.

## BACKGROUND

¶ 2 Defendant checked into the Suburban Lodge in Salt Lake City on July 31, 1999 and paid for a room through August 7, 1999. According to the motel manager's testimony, defendant was informed that check out time was at 11:00 a.m. On August 7, the day defendant was scheduled to check out, defendant informed the motel manager, Margie Hathenbruck, that she needed extra time to get out of her room. Although the motel has a policy that tenants must check out by 11:00 or pay for another day, Hathenbruck testified that the motel usually allows a one-hour grace period and that she may have indicated that defendant could stay until 2:00 p.m., when the office closed.

¶ 3 At 1:00 p.m., Hathenbruck went to defendant's room, expecting to find it empty. Defendant's mother answered the door because defendant was packing her belongings.

Defendant's mother was angry and told Hathenbruck that she and her daughter would not be able to leave at 2:00 and would "be out when we're ready." Defendant's mother then slammed the door in Hathenbruck's face. Because defendant's mother had been belligerent, Hathenbruck returned with the motel maintenance man, intending to stay in the room until defendant and her mother vacated the room. Defendant's mother continued to be difficult and gave Hathenbruck and the maintenance man a hard time. Consequently, Hathenbruck left the room to call the police to assist her in getting defendant out of the room.

¶ 4 Midvale police officers Volpe and Proulx arrived at the motel at about 1:30 p.m. Hathenbruck explained to the officers that she needed to shut down the office at 2:00 and to get defendant out of the room. When the officers arrived at the room, the door was wide open. Because defendant's mother was acting belligerently and yelling, Officer Proulx entered the room to quiet her down. After talking with Hathenbruck and learning that Hathenbruck wanted defendant out of the room, Officer Volpe also entered the motel room.

¶ 5 The officers did not have a warrant to enter the room, nor did they have defendant's permission to enter. The officers believed that defendant was supposed to check out by 11:00 a.m. and thus had no right to remain in the room. Once the officers were in the room, they noticed drug paraphernalia in plain view on the bed. Furthermore, a search of defendant's belongings revealed the forged checks which served as the basis for this conviction. Defendant filed a motion to suppress the evidence found when police entered and searched the motel room. The trial court denied the motion. Defendant then pleaded guilty to one count of possession of a forged check, reserving her right to appeal the denial of the motion to suppress.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Defendant challenges both the trial court's factual findings, arguing certain findings are contrary to the evidence presented, and the trial court's legal conclusion,

arguing she had a reasonable expectation of privacy in the motel room after check out time. A trial court's factual findings are reviewed deferentially under the clearly erroneous standard, and its conclusions of law are reviewed for correctness with some discretion given to the application of the legal standards to the underlying factual findings. *See State v. Pena*, 869 P.2d 932, 935–940 (Utah 1994); *State v. Wells*, 928 P.2d 386, 388 (Utah Ct.App.1996).

## ANALYSIS

¶ 7 Defendant argues that two of the trial court's factual findings, numbers three and four, are erroneous to the extent they find that defendant did not have a reasonable expectation of privacy until 2:00 p.m.[1] In order to challenge the trial court's findings of fact, defendant "must demonstrate to appellate courts first how the trial court found the facts from the evidence, and second why such findings contradict the weight of the evidence." *In re S.T.*, 928 P.2d 393, 400 (Utah Ct.App.1996). A successful challenge to a trial court's factual findings will " 'induce a definite and firm conviction that a mistake has been made.' " *Id.* (citation omitted).

¶ 8 Defendant claims that Hathenbruck's testimony is contrary to findings three and four. Specifically, Hathenbruck testified:

Q: Did you at that time, tell her that she had to pay or be out of the room?

Hathenbruck: Yes. I did.

Q: And by what time was she to be out?

Hathenbruck: Well, actually, they're supposed to be out at 11:00 or pay by 11:00. She had come down to talk to me and I may have extended that time. We usually give them a one-hour grace period, but I did say that we close at 2:00 that day and we most definitely had to be out before then.

Thus, defendant argues that Hathenbruck's testimony does not clearly establish that defendant was required to leave the room at 11:00 a.m. To the extent that defendant claims the trial court erred in finding defendant did not have a reasonable expectation of privacy beyond check out time, we agree that Hathenbruck's testimony suggests that defendant was given additional time to vacate the room.

¶ 9 Nevertheless, the trial court's factual findings are not clearly erroneous when read together. In fact, the trial court's fourth factual finding states that Hathenbruck gave defendant additional time to vacate the room or pay for an additional day. Thus, it is clear that the trial court accepted defendant's argument to some extent. The critical question, however, is how long did the motel allow defendant to remain in the room, thereby extending her right to privacy. On this question, the trial court did not make any specific finding. Therefore, we must determine when defendant's expectation of privacy ended. *See, e.g., State v. Wells*, 928 P.2d 386, 387 (Utah Ct.App.1996) (noting "search and seizure issues are fact sensitive"). Accordingly, although the trial court's factual findings were not clearly erroneous, we refer to additional evidence contained in the record for purposes of our analysis.

¶ 10 In order to contest the search of the motel room, defendant has the burden to establish "a legitimate, continuing expectation of privacy on [her] part while [she] remained in the room after the rental period had ended." *Commonwealth v. Brass*, 42

---

1. The findings relevant to defendant's expectation of privacy are as follows:

    3. That defendant was informed by Lodge Manager Margie Hathenbruck that defendant must either pay rent for an additional day or vacate the room on August 7, 1999, by 11:00 a.m., the specified hour to vacate the room.

    4. That Lodge Manager Hathenbruck told defendant that the former was willing to give defendant some additional time to present the rent.

    5. That by shortly after 1:00 p.m., Lodge Manager Hathenbruck had not heard from defendant nor had defendant tendered the rent for an additional day.

    6. That shortly after 1:00 p.m. on August 7, 1999, Lodge Manager Hathenbruck went to Room 331 expecting to find it vacant.

    7. That when she arrived at Room 331, Lodge Manager Hathenbruck found defendant and the latter's unregistered mother still in possession of the room.

    8. That defendant's mother informed Lodge Manager Hathenbruck that defendant and she would vacate the room when they were ready to do so.

Mass.App.Ct. 88, 674 N.E.2d 1326, 1327 (1997); *see also State v. Mitchell,* 20 S.W.3d 546, 557 (Mo.Ct.App.2000) (same). Whether an individual has an expectation. of privacy is based on a two-prong test: "First, the individual must have a subjective expectation of privacy, and second, that subjective expectation must be reasonable." *United States v. Kitchens,* 114 F.3d 29, 31 (4th Cir.1997) (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).

¶ 11 Although Utah appellate courts have not previously addressed this issue, the law concerning a hotel guest's expectation of privacy under the Fourth Amendment is well settled: "[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964). A hotel guest's expectation of privacy, however, is not unlimited, but normally ends upon the termination of the rental period. *See Kitchens,* 114 F.3d at 31. Nevertheless, "[a] guest may still have a legitimate expectation of privacy even after his [or her] rental period has terminated, if there is a pattern or practice which would make that expectation reasonable." *Id.* at 32. Thus, in order to fall within this exception, defendant has the burden of showing that Hathenbruck allowed her to stay past check out time based on their conversations.

¶ 12 Relying on two cases, defendant claims she had a reasonable expectation of privacy in the room until 2:00 p.m. Defendant refers us to *United States v. Owens,* 782 F.2d 146 (10th Cir.1986) and *United States v. Watson,* 783 F.Supp. 258 (E.D.Va.1992) to bolster her claim that her expectation of privacy after check out time was reasonable. In *Owens,* defendant paid for one night at a motel. *See id.,* 782 F.2d at 147. When defendant did not check out by noon the next day, motel personnel called his room to inquire if he intended to stay another day. *See id.* at 147–48. In response to this call, defendant's companion went to the front desk and deposited an additional payment of $100.00. *See id.* at 148. The parties disputed the effect of this subsequent deposit. The motel

had a daily rate of $28.45 or a weekly rate of $106.00. *See id.* Defendant testified that he was told the additional $100 plus the amount paid for the first night was sufficient to rent the room for a week. *See id.* On the other hand, the motel manager stated that all weekly rentals were assigned rooms in a different part of the motel and had to be approved by the manager, but since neither occurred defendant was only renting on a day-to-day basis. *See id.* Additionally, defendant had incurred telephone charges that affected the balance he owed to the motel. *See id.*

¶ 13 The search of the motel room in *Owens* occurred after defendant's tenancy would have expired if he paid for the room on a day-to-day basis, but prior to expiration if he had secured the weekly rental. *See id.* In determining whether defendant had a reasonable expectation of privacy, the Tenth Circuit concluded that defendant's presence in the room after his day-to-day tenancy had ended, combined with his prior conduct in attempting to secure a weekly rental, "strongly suggested that he intended to continue his stay." *Id.* at 150. The court stated that the evidence suggested that a reasonable person in defendant's situation would have expected to have secured a weekly rental in exchange for the money paid. *See id.* Thus, *Owens* supports defendant's position that a renter can have a reasonable expectation of privacy after the rental period expires even though a dispute exists over whether the renter actually has a right to occupy the room past check out time.

¶ 14 In *Watson,* defendant checked into the hotel and indicated the length of his stay was uncertain and he would pay day-by-day. *See Watson,* 783 F.Supp. at 259. The hotel had a policy that if guests wished to extend their stay they needed to pay the next day's rent by the noon check out time. *See id.* Defendant stayed for three additional days. *See id.* Despite the hotel's policy requiring rent payment by noon, defendant consistently paid after 12:00 p.m.; specifically, at 4:45 p.m., 3:12 p.m., and 10:09 p.m. *See id.* On the fourth day of defendant's stay, the hotel's assistant manager noticed that the hotel was quickly selling out and that defendant was

due to check out that day. At about 4:00 p.m., she went to check on defendant's room to determine if it was vacant. *See id.* She noticed a few items still in the room, including a briefcase, a suit with four ties, and various personal items scattered about the room. *See id.* at 259–60. The assistant manager began to inventory the items left. *See id.* at 260. Based on suspicious circumstances observed by hotel employees—defendant had many visitors and phone calls at odd hours, had a large wad of bills in his briefcase, and had given a fake address—the assistant manager relayed their suspicion to police. *See id.* Police arrived and the assistant manager allowed them to search defendant's room. *See id.* While police were searching the room, defendant arrived at the front desk at 10:33 p.m. and paid for another night's stay. *See id.*

¶ 15 Reviewing the police search of the room, the district court concluded that defendant had a reasonable expectation of privacy. *See id.* at 263. Specifically, the court stated the hotel manager's assumption that the room had been abandoned was unreasonable for two reasons: (1) the manager had observed that defendant had left several personal items in the room; and (2) the hotel had consistently allowed defendant to pay for his room well after the noon check out time. *See id.* The court stated: "The presence in the room of many personal items in addition to the hotel's lax enforcement of its check-out policy and Mr. Watson's prior payment history suggest that Mr. Watson intended to continue his stay at the hotel and that it was reasonable for him to intend to continue his stay." *Id.* Thus, like *Owens*, *Watson* allows a tenant to maintain a reasonable expectation of privacy in a room after check out time when the hotel's acts would lead the tenant to believe the tenancy period had been extended.

¶ 16 We believe, however, that defendant's reliance on *Owens* and *Watson* as controlling authority is unwarranted. In *Owens*, defendant reasonably believed he had paid for a week's rental and the warrantless search occurred during the period when defendant had secured his tenancy. The search was unconstitutional because defendant had a reason-able expectation of privacy based on his payment for a week's stay and the motel clerk's assurance that the payment was adequate. *See Owens*, 782 F.2d at 147–48. In *Watson*, the hotel had consistently allowed the defendant to pay for the next day well after the noon deadline. During the warrantless search of the room, defendant had arrived and attempted to pay for another night, within minutes of the time he had paid the previous night. *See Watson*, 783 F.Supp. at 263. Thus, in both cases, the defendants had attempted to pay for an additional tenancy and the hotel had previously allowed them to pay after the stated deadline, thereby extending the term of their reasonable expectation of privacy.

¶ 17 In this case, defendant had not paid for an additional night in the room and had no pattern of paying late for additional rental days. *Owens* and *Watson* therefore apply only so far as there was a pattern of noncomplying behavior allowed by the hotel management.

¶ 18 On the other hand, the State argues that because the motel in this case did not have a pattern or practice relating specifically to defendant, *United States v. Kitchens* is more applicable. In *Kitchens*, defendant produced no facts to show that he had attempted to extend his stay or that the motel had allowed him to do so in the past. *See id.* 114 F.3d at 32. The court recognized the exception outlined in *Owens* and *Watson*, but declined to apply it to the facts at hand. *See id.* The court distinguished *Owens* and *Watson*, stating:

> In both *Watson* and *Owens*, the guests consistently renewed their lease term after checkout time. In both cases, the courts determined that an individual maintained a legitimate expectation of privacy even after his lease term had expired since the hotel had previously allowed the individuals to stay after check-out time without consequence.

*Id.*

¶ 19 Similarly, in *State v. Mitchell*, 20 S.W.3d 546 (Mo.Ct.App.2000) defendant called the front desk and indicated that he would be checking out late because he overslept. *See id.* at 558–59. The court stated:

[The record] does not indicate that Defendant obtained management's permission to stay past 11 a.m., or that he asked to stay to any particular time of day. In the absence of evidence of motel permission to stay or of a prior pattern or practice of the motel of allowing guests to stay past check-out time, Defendant's reasonable expectation of privacy in the room ended at check-out time even if he and his possessions still remained in the room. The motel staff would have had a right to enter at any time to evict him or to prepare the room for the next guest.

*Id.* at 559. Thus, *Mitchell* requires that the motel grant a tenant's request to stay past check out time or engage in a clear practice of allowing the tenant to stay longer in order for the expectation of privacy to be reasonable. A tenant's unilateral request to stay past check out time is not sufficient absent evidence that the motel actually agreed to the tenant's request.

¶ 20 Despite the State's argument that *Kitchens* is applicable because defendant's tenancy ended at 11:00 a.m., the evidence in the record is not so unequivocal. Defendant told Hathenbruck she needed to stay past check out time. The evidence showed that the motel was generally lenient in working with its tenants and often allowed a one hour grace period. Furthermore, Hathenbruck testified that she may have told defendant that she could stay until 2:00 p.m., but that she also said she needed to close the office at 2:00 and defendant had to be out by then. Based on these facts, defendant has at least shown more than the defendants in *Kitchens* and *Mitchell*, where neither defendant produced any evidence to show that the motel had allowed them to stay past check out time. In this case, as the trial court found, defendant had a reasonable expectation of privacy in the room past 11:00 a.m.

¶ 21 In *United States v. Rahme*, 813 F.2d 31 (2nd Cir.1987), police arrested defendant in a hotel near La Guardia Airport. *See id.* at 33. Police found a key to another hotel room in Manhattan in defendant's possession. *See id.* Several days after defendant's arrest, police contacted the Manhattan hotel to determine if defendant had stayed there.

*See id.* The hotel informed police that they had removed defendant's luggage from a room because no one had paid for another night prior to check out time. *See id.* Police then retrieved defendant's luggage from the motel and found certain incriminating evidence. *See id.* The Second Circuit noted the general rule affording hotel guests a right of privacy until check out. *See id.* at 34. The court determined that a guest's right to privacy ends once the tenancy ends. *See id.* More importantly, the court stated: "[W]e have held that once the guest's access to the room is no longer his 'exclusive right,' he has no legitimate expectation of privacy in the room even though he himself still has access." *Id.*

¶ 22 Other courts have applied *Rahme* in cases with facts similar to this case. For example, in *United States v. Singleton*, 922 F.Supp. 1522 (D.Kan.1996), the motel manager contacted defendant's room to inquire if defendant and her companions would be staying another night. *See id.* at 1525. Defendant's friend told the motel manager that he would come to the office to pay for another night. *See id.* The manager called the room three more times prior to 1:00 p.m. and after the 11:00 a.m. check out time. *See id.* Defendant's friend told the manager they were waiting for his employer to come by with a check in order to pay for the next night. *See id.* The motel manager informed the tenants that the motel charged all customers staying past 2:00 p.m. for a half-day rental. *See id.* The manager called the room again at 2:00 p.m. because the guests now owed the motel for a half-day rental. *See id.* At 3:00 p.m., the motel manager called police because he was owed additional rent and the tenants continued to occupy the room. *See id.* When police arrived, the manager told them he either wanted the tenants to pay the additional rent or vacate the room. *See id.* In the motel parking lot, police confronted defendant's friend, who told them he was going to speak to the motel manager about the rent. *See id.* at 1525–26. The motel manager informed defendant's friend that their time was up and gave defendant and her companions fifteen minutes to pack their belongings and vacate the room. *See id.* at 1526. After fifteen minutes, the

manager sent police to the room to evict the guests. *See id.* Police threatened to open the door with a pass key and were allowed into the room where they discovered contraband in plain view. *See id.*

¶ 23 The district court noted that defendant had an exclusive right to the room until 11:00 a.m. based on her rental of the room. *See id.* at 1528. Defendant argued that she was entitled to an expectation of privacy after 11:00 a.m. because the motel had allowed them extra time to get the money and because of a mutual misunderstanding between themselves and the management. *See id.* The district court disagreed and distinguished the case from *Owens* and *Watson.* *See id.* at 1529. The court stated:

> It is uncontroverted that [the motel manager] openly treated [defendant and her friend] as holdover tenants.... Whatever claim of privacy that [defendant] could have based on [the manager] giving [defendant's companion] time to vacate the room need not be resolved, for the allotted time had lapsed before the officers ever entered room 131. Sergeant Koch understood that [the motel manager] had authorized him to enter room 131 in order to evict the tenants. [The motel manager] plainly intended for the police officers to enter the room for that purpose, as he had sent a maintenance person with a pass key along with the officers.

*Id.; see also United States v. Allen,* 106 F.3d 695, 699 (6th Cir.1997) (holding when motel manager "took possession of the motel room, [defendant] could no longer assert a legitimate privacy interest in its contents").

¶ 24 Thus, a defendant may lose his or her expectation of privacy in a room once he or she no longer has "exclusive control" of the room. A defendant may still have possession of or access to the room, but if check out time has passed and management is attempting to exercise control over the room, defendant no longer has a reasonable expectation of privacy in the room. In all cases cited where the hotel has taken affirmative action to evict defendants from a room, the

hotel asserted its private right prior to any police involvement.[2]

¶ 25 The reasoning of *Rahme, Singleton,* and *Allen* is applicable to this case. Hathenbruck's testimony indicates that she was working with defendant during the morning, but had never received additional payment for another night's rent. When Hathenbruck went to the room around 1:00 p.m., she stated that she expected to find the room empty. Instead, defendant and her mother were still occupying the room. At this point, defendant's mother made it clear to Hathenbruck that the room would not be vacated by the absolute deadline of 2:00 p.m., when Hathenbruck needed to close the office. In order to get defendant out of the room, Hathenbruck asked a motel maintenance man to accompany her to the room and intended to stay in the room until defendant left. At this point, defendant no longer had exclusive control of the room. Hathenbruck wanted defendant out of the room and took steps to accomplish that goal on her own without any police involvement. At the point in time—approximately 1:30 p.m.—when defendant indicated she was not going to comply with Hathenbruck's request that she vacate the room by 2:00 p.m., Hathenbruck effectively terminated defendant's right to occupy the room and any reasonable expectation of privacy in the room and its contents. Therefore, the police's warrantless entry into the room in order to assist Hathenbruck in evicting defendant was not an unreasonable search or seizure under the Fourth Amendment.

¶ 26 In holding that the facts of this case do not support defendant's claim that she had a reasonable expectation of privacy, we note that this case is a close call. Furthermore, our holding should in no way be construed to allow police to wait until one minute after check out time and then enter a motel room without a warrant. *See Kitchens,* 114 F.3d at 32 n. 3 (noting that most hotels allow their guests some leeway regarding check out time thereby creating a

---

2. A different outcome may result in a case where police attempt to circumvent the warrant requirement by asking or directing a motel manager to take control of a room to allow a consent search.

reasonable expectation of privacy in the room).

## CONCLUSION

¶ 27 Defendant had a reasonable expectation of privacy in the motel room after check out time based on her conversations with Hathenbruck. This expectation of privacy, however, was extinguished when Hathenbruck took affirmative steps to take control of the room, thereby depriving defendant of her exclusive right to occupy the room. Once Hathenbruck had asserted her control over the room and requested police assist her in evicting defendant from the room, the warrantless entry by police into the room did not violate defendant's Fourth Amendment right against unreasonable searches and seizures because defendant lacked a reasonable expectation of privacy in the room and its contents. The trial court's denial of defendant's motion to suppress is affirmed.

¶ 28 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.