*NUFI v. Garpo*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand nineteen.

PRESENT:

BARRINGTON D. PARKER,
RICHARD C. WESLEY,
SUSAN L. CARNEY,
　　　　*Circuit Judges.*

───────────────────────────────────

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,
as subrogee of Star of America Charters, LLC,

　　　　*Plaintiff-Appellee,*

　　　　　　v.　　　　　　　　　　　　　　　　No. 17-3286

GARPO MARINE SERVICES, INC.,

　　　　*Defendant-Appellant.*

───────────────────────────────────

FOR APPELLANT:　　　　　　　　JAMES W. CARBIN (Patrick Ryan McElduff, *on the brief*), Duane Morris LLP, Newark, N.J.

FOR APPELLEE:　　　　　　　　EDWARD P. FLOOD, Lyons & Flood, LLP, New York, N.Y.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Block, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 14, 2018, is **AFFIRMED**.

Defendant-Appellant Garpo Marine Services, Inc. ("Garpo"), a marina and commercial ship repair business, appeals from the district court's judgment holding Garpo liable for the total loss of a dinner cruise boat (the "Star of America" or the "Star"), which was docked at Garpo's facility when it was destroyed in October 2012 during Superstorm Sandy. Plaintiff-Appellee National Union Fire Insurance Company of Pittsburgh, PA. ("NUFI"), which insured the Star, sued Garpo as subrogee of the Star's owners, seeking damages for (1) breach of contract, (2) breach of bailment, (3) negligence, (4) breach of warranty of workmanlike service, and (5) breach of warranty. After a four-day bench trial, the district court found for NUFI on all five counts. The court found that the Star's owners had made a repair agreement with Garpo, under which the Star would be delivered on Sunday, October 28, 2012, and hauled to dry land before the incoming storm hit on Monday evening, October 29. The boat was not hauled to land before the storm arrived, and, during the ensuing high winds and rains, the boat battered the staging dock to which it was tied, and ultimately sank. The district court concluded that Garpo had a duty to take reasonable measures to protect the Star during the storm and that it failed to do so. Garpo now challenges the district court's findings of fact and conclusions of law on various grounds. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

**I**

When reviewing a judgment entered after a bench trial, we will not set aside the district court's findings of fact "unless [they are] clearly erroneous." Fed. R. Civ. P. 52(a)(6); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be

clearly erroneous." *Anderson,* 470 U.S. at 574. In particular, we "must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). As trier of fact, the judge is "entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (internal citations omitted). In contrast, we review *de novo* the district court's conclusions of law and its application of the law to the facts. *See, e.g., Henry v. Champlain Enters., Inc.,* 445 F.3d 610, 617–18, 623 (2d Cir. 2006). As to mixed questions of law and fact, we review the district court's conclusions "either *de novo* or under the clearly erroneous standard, depending on whether the question is predominantly legal or predominantly factual." *United States v. Skys,* 637 F.3d 146, 152 (2d Cir. 2011) (quoting *United States v. Thorn*, 446 F.3d 378, 387 (2d Cir. 2006) (alterations omitted)).

Because this case involves the storage and maintenance of a vessel "at a marina on a navigable waterway," it arises under our maritime jurisdiction. *Sisson v. Ruby*, 497 U.S. 358, 367 (1990); 28 U.S.C. § 1333(1). The general maritime law of federal courts "is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules" that are "[d]rawn from state and federal sources." *East River S.S. Corp. v. Transam. Delaval, Inc.*, 476 U.S. 858, 864–65 (1986) (citation omitted).

## II

We discern no error in the district court's determination that Garpo was liable for the destruction of the Star under NUFI's claim for breach of bailment. We therefore need not address NUFI's alternative grounds for recovery. *See Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (court of appeals may affirm district court decision on any ground supported by record).

A bailment is "the delivery of goods by their owner to another for a specific purpose, and the acceptance of those goods by the other, with the express or implied promise that the goods will be returned after the purpose of the delivery has been fulfilled." *Goudy & Stevens, Inc. v. Cable Marine, Inc.*, 924 F.2d 16, 18 (1st Cir. 1991). Different forms of bailment give rise to different duties on the part of the bailee (the party in temporary possession). A "bailment

3

for mutual benefit" arises where, among other circumstances, the bailor hires the bailee to "store" or "do some work upon the property," 19 Williston on Contracts § 53:11 (4th ed.), including in contracts for the repair of ships. *See Goudy*, 924 F.2d at 18 ("It has long been established that the law of bailment is applicable to suits for damages to or loss of a vessel that has been left with another for purposes of repair.").

Where the evidence establishes a bailment for mutual benefit, the bailee owes a duty of "ordinary care in relation to the property and is responsible only for ordinary negligence." 19 Williston § 53.11. Although the plaintiff-bailor bears the burden of proving the damage for which it seeks recovery, that "*prima facie* burden may be met by the [plaintiff-bailor] showing that the [property] was delivered in good condition," and returned damaged. *GTS Indus. S.A. v. S/S "Havtjeld,"* 68 F.3d 1531, 1537 (2d Cir. 1995). That showing then triggers a presumption that the damage was caused by the bailee's negligence, requiring a bailee to "produc[e] proof showing that the cause of loss was not one involving its negligence." *Id.* In *Commercial Molasses Corp. v. New York Tank Barge Corp.*, the U.S. Supreme Court justified this presumption by explaining that bailees are generally in a better position than bailors to know the cause of the loss and should therefore be charged with a duty to come forward to show an absence of their own liability. 314 U.S. 104, 111 (1941). Without such a showing, it taught, the "trier of fact [is] free to draw an inference unfavorable to him." *Id.*

The district court correctly articulated the law of bailments as set forth above, found that Garpo made an "oral [agreement] to repair the Star" and that this "created a bailment when the vessel was delivered to the marina," giving rise to a presumption of negligence against Garpo when it returned the Star destroyed. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Garpo Marine Services, Inc.*, No. 14-cv-6481 (FB) (PK), 2017 WL 4157264, at *3 (E.D.N.Y. Sept. 19, 2017).

Garpo argues that the district court erred in its application of the law. It contends that neither a bailment nor a presumption of negligence arose because the Star was not properly delivered to it, and the Star's owner never transferred "exclusive" control of the vessel to Garpo because the owner retained its keys after tying it up at the Garpo dock.

4

Garpo relies on the law of wharfingers—owners or keepers of a dock—to advance its argument.

Wharfingers, unlike those who undertake to repair or store a vessel, merely provide vessels a place to dock or moor while their owners retain free access to them. Because the vessel owners retain access, a wharfinger's possession of the vessels left at its property is generally not exclusive of the vessels' owners. The bailee's presumption of negligence therefore does not arise. *United States v. Mowbray's Floating Equip. Exc., Inc.*, 601 F.2d 645, 647 (2d Cir. 1979). Indeed, wharfingers owe a duty of reasonable care only insofar as they are responsible for maintaining their docks—not the vessels they allow to tie up there. *Milo v. Biegler*, 86 A.D. 2d 503, 503-04 (1st Dep't 1982). Garpo contends that it fulfilled that limited duty and therefore is not liable for the Star's loss.

We disagree. First, we see no clear error in the district court's finding that Garpo had an "oral [agreement] to repair the Star," *Garpo*, 2017 WL 4157264 at *3, and that Garpo authorized the Star's owners "to dock the [Star] at the marina until it could be hauled onto dry land" on the morning before the storm was expected to arrive. *Id.* at *1. The agreement, the court found, was to transfer control of the Star to Garpo for the purpose of hauling it from the water and storing it to await scheduled repairs. Although such an agreement shares some qualities of both bailment and wharfinger services, we think it more akin to an agreement to store or repair a vessel (which creates a bailment for mutual benefit and gives rise to a presumption of negligence), than it is to an agreement for wharfinger services (which does not).

Further, Garpo's contention that the Star's owner made the "unilateral decision to leave the vessel, locked, at a closed shipyard on a Sunday evening," Appellant Reply Br. at 12, thus failing to effect delivery necessary to create a bailment, is in direct conflict with the district court's factual findings. The district court found that the Star was delivered on a Sunday, before the storm arrived the following Monday, in accordance with the agreement between Garpo and the Star's owners. Garpo also confirmed delivery and Garpo's acceptance of the Star by phone on Monday morning: the district court found that, on that morning of the looming storm, Garpo's owner and office manager spoke with the Star's

5

owners by telephone and told them that the Star would not be taken out of the water and would remain at the staging dock throughout the storm, but that "steps would be taken to secure and protect the Star during the storm." *Garpo*, 2017 WL 4157264 at *2. This manner of delivery, agreed upon beforehand, was sufficient to create a bailment.

That the Star's owner kept the keys, rather than giving them to Garpo at delivery, does not negate this conclusion. As described by Garpo's owner, the hauling process involves pulling the vessel by hand onto a travel lift positioned in the water. The travel lift then removes the vessel from the water. The vessel's engine cannot run during the lifting process, and so the handler does not need access to the keys at all. The district court thus correctly found that a bailment was created upon the Star's delivery to Garpo.

### III

Garpo next argues that the district court clearly erred in concluding that, "Sandy's arrival and likely impact were foreseeable far enough in advance to allow Garpo to take protective measures." *Id.* at *3. Garpo contends that the trial evidence showed that, by 10:00 a.m. on Monday—approximately nine hours before the storm hit—the danger posed by the mounting winds prevented Garpo both from moving the Star from the staging dock where it was tied up over to the more secure pontoon dock—which was, at any rate, already full by 10:00—and from moving the Star to dry land.

There is no question—and Garpo does not dispute—that Garpo was aware of the impending storm well before 10:00 Monday morning. In the days before the storm, Garpo allowed other vessels to berth at Garpo's safer pontoon dock for purposes of weathering the storm. Ultimately, none of these vessels sustained serious damage. This (if not the forecasts) demonstrates that Garpo knew well before 10:00 on Monday morning to expect the storm's arrival and that the pontoon dock was likely to fill up. Based on Garpo's agreement with the Star's owners, Garpo personnel knew or should have known that the Star would be delivered to Garpo's less secure staging dock over the weekend—around the same time that the other vessels were docking at the pontoon dock in preparation for the storm. Garpo's owner also testified that he knew that the staging dock where the Star was tied, unlike the pontoon

6

dock, was an unsafe location for the boat during a storm. Thus, Garpo could have, and should have, taken measures to protect the Star *before* 10:00 on Monday morning—at a minimum, by securing it to the steel pontoon dock with additional lines.

According to the testimony and the facts found by the district court, however, no Garpo personnel made any attempt to better secure the Star. When the Star's owners contacted Garpo on Monday morning, rather than warn them that the staging dock was unsafe, Garpo's owner and the company's office manager both simply advised the owners not to worry and told them that Garpo would take precautions. This was insufficient.

**IV**

Finally, Garpo argues that the district court abused its discretion by limiting Garpo's cross-examination of Dorit Zeevi-Farrington, the Star's co-owner, whose testimony the district court credited in finding an agreement to haul and repair the Star between Garpo and the Star's owners. Determining "[t]he permissible scope and extent of cross-examination" is committed to the discretion of the district court. *United States v. Rahme*, 813 F.2d 31, 37 (2d Cir. 1987). Further, "the trial court has discretion regarding the mode . . . of interrogating witnesses to make the presentation effective for the ascertainment of truth and to avoid needless consumption of time." *United States v. Lanza*, 790 F.2d 1015, 1020 (2d Cir. 1986) (internal quotation marks omitted).

Here, the district court limited cross-examination conducted by Garpo's counsel because (as the judge explained) he perceived the line of questioning to be ground already covered. The specific impeachment evidence that Garpo complains of not being able to explore sufficiently—the fact that Zeevi-Farrington's deposition testimony differed in material ways from her trial testimony—had already been sufficiently addressed earlier in counsel's cross-examination of Zeevi-Farrington. When the district court asked what Garpo's counsel had been prevented from asking, counsel identified nothing specific and responded only that he thought "we could get into it a little [] deeper." App'x 365. The district court was well within its discretion to reject this unpersuasive justification for further questioning. The district court's active role in managing the "scope and extent of cross-

7

examination" of Zeevi-Farrington did not unduly impair Garpo's ability to present its defense. In its post-trial proposed findings of fact before the district court, Garpo made the same argument as it makes here—that inconsistencies conclusively discredit Zeevi-Farrington's testimony. The district court was thus aware of Garpo's argument and the evidence in support, but rejected it and credited Zeevi-Farrington's testimony. We see no abuse of discretion in that decision.

* * *

We have considered Appellant's remaining arguments and conclude that they are without merit. For the reasons set forth above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court