Sophal PHON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2000–CA–000857–MR.

Court of Appeals of Kentucky.

July 13, 2001.

Kathleen Kallaher Schmidt, Shepherdsville, KY, Brief for Appellant.

Albert B. Chandler III, Attorney General of Kentucky, David A. Smith, Assistant Attorney General, Frankfort, KY, Brief for Appellee.

Before BUCKINGHAM, COMBS, and SCHRODER, Judges.

COMBS, Judge:

Sophal Phon appeals from the order of the Warren Circuit Court denying his motion for relief alleging ineffective assistance of trial counsel pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. After reviewing Phon's arguments in light of the record, we affirm.

On October 31, 1996, Phon, then sixteen years old, was transferred to Warren Circuit Court as a youthful offender. On November 13, 1996, he was indicted on several charges: two counts of murder, first-degree assault, and first-degree robbery and burglary. These charges arose from Phon's execution-style shooting of a Warren County couple and their 12–year–old daughter in their home on August 17, 1996; only the child survived. The Commonwealth sought the death penalty for the two murders charged in the indictment.

Phon was represented by Vincent P. Yustas, an employee of the Department of Public Advocacy (DPA) and a member of its Capital Trial Unit. Phon's mitigation defense was that he was acting under duress or under the domination of twenty-six-year-old Outh Sananikone, one of his four co-defendants and the leader of a gang to which Phon belonged. Phon claimed that he believed that if he did not shoot the victims as ordered by Sananikone, he and his family would be killed in retaliation. Yustas attempted to obtain a severance of Phon's trial from that of his co-defendants but was only partially successful; the trial court denied the request to be severed from Sananikone.

After the crimes had been committed but prior to Phon's trial which was scheduled to commence on July 6, 1998, the Legislature amended the penalties in KRS 532.030(1) (effective July 15, 1998) to permit the imposition of life without the possibility of parole. The Commonwealth moved the trial court for a ruling preventing the application of this new penalty— presumably making the imposition of a death penalty more likely. The trial court denied the motion on July 2, 1998.[1] On July 5, 1998, Phon entered an open-ended guilty plea with no recommendation as to sentencing on any of the charges by the Commonwealth. He also executed a document consenting to the jury's consideration of the penalties in the newly amended KRS 532.030(1). After a two-week sen-

---

1. The trial court's ruling was upheld in the motion filed by the Commonwealth for a certification of the law. *See Commonwealth v. Phon*, Ky., 17 S.W.3d 106 (2000).

tencing trial, the jury recommended that Phon be sentenced to life without parole for each of the murders and to twenty years for each of the other crimes.

Before Phon was formally sentenced, he filed a *pro se* motion for post-conviction relief alleging that trial counsel had been ineffective. After Yustas received a copy of the motion, he met with Phon and advised him that if he were successful in getting the judgment set aside for *any* reason, he would render himself eligible to be sentenced to death. Yustas testified at the RCr 11.42 hearing that he left that meeting with the clear impression that Phon was going to withdraw his motion to vacate his sentence as he did not want to again be subjected to the death penalty. Therefore, Yustas did not file a notice of appeal after the final judgment was entered on September 4, 1998. However, Phon did not withdraw his post-trial motion, and on September 19, 1998, the trial court ordered the DPA to represent Phon, to investigate his allegations of ineffective assistance of counsel, and to file a supplemental motion if necessary.

On April 6, 1999, Phon filed a motion in the Kentucky Supreme Court for leave to file a belated appeal. The trial court granted his request that his motion for post-conviction relief be held in abeyance. In its order of July 14, 1999, the Supreme Court referred the matter back to the Warren Circuit Court for a hearing. It specifically ordered the trial court to make findings with respect to whether the failure to file a notice of appeal was ineffective "in a constitutional sense, whether trial strategy was involved and whether [Phon] consented to or may be properly charged with the alleged ineffectiveness of counsel."

Yustas and Phon both testified at the hearing conducted in November 1999, which dealt with all of Phon's ineffective assistance claims, including counsel's failure to file a notice of appeal. In a very complete order entered March 1, 2000, the trial court denied relief. With respect to Phon's contention that counsel was ineffective in advising him to plead guilty and in failing to advise him that life *without* parole would be a possible sentence, the trial court found as follows:

Phon now asserts that Yustas did not explain to him that life without parole did not have to be included in the available penalties. Phon further asserts that he did not give his consent for Yustas to advise the Court that the jury be instructed on this punishment.

These assertions directly contradict both the document that Phon signed, and Phon's responses to this Court's questions during his guilty plea. This Court reminded Phon of his right to stop the guilty plea proceeding and ask his lawyer, this Court, or the Commonwealth a question. Phon indicated that he understood that the jury only would decide his punishment. This Court pointed out to Phon that he was pleading guilty with no recommendation from the Commonwealth. Further, this Court specifically went over each of the possible punishments which the jury could impose, including the punishment of life in prison without the possibility of parole. Phon answered that he understood the various punishments which could be imposed by a jury.

Based on the document that Phon signed, and Phon's answers to this Court's inquiries during his guilty plea, this Court concludes that Phon was aware that the penalty of life without parole would be included as a possible punishment and that Phon consented to that instruction.

. . . .

Yustas' advising Phon to allow life without parole to be available to the jury clearly was a matter of trial strategy, and now that Phon is unhappy with the result, he has filed this motion.

By giving the jury an opportunity to sentence Phon to life without parole, Yustas was hoping to spare his client from the death penalty. This Court finds that Yustas' performance did not fall below an objective standard of reasonableness.

With respect to the claim of ineffectiveness in failing to file a notice of appeal, the trial court found:

There is no question that Phon knew of his right to an appeal. This Court informed Phon of his right to appeal after sentencing him, and this Court also noted in the Judgment and Sentence on Plea of Guilty that Phon had the right to an appeal. Yustas testified that he discussed the possibility of appeal with Phon after Phon filed his *pro se* RCr 11.42 motion, but before the Judgment and Sentence on Plea of Guilty was entered. After discussing the possibility of appeal with Phon, Yustas was under the impression that Phon did not want to appeal.

Phon, by Affidavit, asserts that he always wanted to appeal. This Court has compared Phon's Affidavit with Phon's representations to this Court during the guilty plea proceeding and Yustas' testimony, and deems Phon's Affidavit to be unreliable.

Assuming Phon had the right to appeal from the penalty portion of his case, the Court finds that the failure to file a notice of appeal is attributable to Phon. *Greer [v. Commonwealth,* Ky.App., 713 S.W.2d 256 (1986) ], *supra.* Therefore, the failure of Yustas to file a notice of appeal cannot be regarded as ineffective assistance of counsel in a constitutional sense.

In this appeal, Phon argues that trial counsel rendered ineffective assistance by advising him to enter the open guilty plea to all charges without getting anything in return from the Commonwealth. Phon's appellate counsel argues that:

a plea bargain should by definition be exactly what it implies, i.e. an agreement between the defendant and prosecutor by which each party has to perform some duty or task for the contract to be valid. The problem here was appellant was forced into a unilateral guilty plea to the charged offenses with no corresponding promise on the part of the Commonwealth that conferred some benefit upon the defendant in exchange for his admission which he is constitutionally not required to make. In short, the prosecutor did not have to offer any leniency to the defendant, but if he did not, the defendant should not have pled guilty, waiving all his constitutional rights and foreclosing any chance the jury might not convict him of murder because he was coerced into the shootings by the enforcer of the gang.

In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord, Gall v. Commonwealth,* Ky., 702 S.W.2d 37, 39–40 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland,* 104 S.Ct. at 2065. In order to show actual prejudice in the context of a guilty plea, a defendant must demonstrate that there is a reasonable probability that, but

for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985). *See also, Taylor v. Commonwealth,* Ky.App., 724 S.W.2d 223, 226 (1986).

■ Upon its review, the trial court found that Yustas advised Phon both to plead guilty and to consent to the inclusion of the new punishment of life without the possibility of parole in the instructions to the jury in order to prevent his client from being sentenced to death. This finding is clearly supported by the testimony elicited at the post-conviction hearing. While Yustas admitted that the open plea was unconventional—a strategy he described as the "talk of Frankfort," he offered three reasons underlying his advice to Phon to proceed in that manner. First, the nature of the evidence of Phon's guilt was overwhelming and a legitimate defense was non-existent. Second, it was a serious necessity to sever Phon's trial from that of the gang-leader, Sananikone, upon whom he believed the jury very likely would want to impose the death penalty. Since Phon actually shot the victims, he testified that he believed that the jury would necessarily feel compelled to sentence Phon to death also if the two were tried together. Third, Yustas hoped that by admitting guilt, Phon would appear to have taken the first step toward rehabilitation, thus inducing the jury to spare his life.

Counsel's advice was a strategy tailored to avoid the death penalty, and it was a strategy that worked. The issue from our perspective is whether it was a reasonable strategy *at the time. Strickland,* at 104 S.Ct. at 2052. In light of the overwhelming evidence of Phon's guilt and the growing societal concern about the increase in violent acts committed by juveniles, we cannot conclude that trial counsel's strategy was unreasonable.

Phon criticizes his trial counsel for focusing almost exclusively on avoiding the death penalty. He insists that he never wanted to plead guilty and states that his sentence of life without the possibility of parole is worse than the death penalty. However, Phon's dissatisfaction with his sentence does not address—much less satisfy—the performance prong of *Strickland, supra.* Thus, the trial court did not err in concluding that he received effective assistance of counsel.

Phon also argues that trial counsel was ineffective for failing to file a timely notice of appeal. It would appear that this issue is moot since the Kentucky Supreme Court denied Phon's motion for a belated appeal on June 9, 2000. However, Phon contends that a determination by this court that trial counsel was ineffective would support a renewed motion for a belated appeal. Though doubtful that such an avenue remains available to Phon, we will address the merits of this allegation of error.

■ Phon argues that Yustas ignored "clear signals" that he wanted to appeal. He also argues that by never asking Phon directly if he wanted to appeal his sentence, Yustas failed as a matter of law to protect his constitutional right to appeal. The Commonwealth correctly observes that *Strickland, supra,* provides the proper framework for an analysis of a claim of ineffective assistance in this regard. In addition to establishing counsel's deficient performance, a defendant must establish "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985, 999, (2000).

In *Roe,* the United States Supreme Court refused to hold that every failure to consult with a client about an appeal was unreasonable. "Such a holding would be inconsistent with both our decision in *Strickland* and common sense." *Id.* at 528 U.S. at 479, 120 S.Ct. at 1036, 145 L.Ed.2d at 996. Instead, the court held that trial counsel

> has a constitutionally-imposed duty to consult with the defendant about an appeal when there is a reason to think either (1) that a *rational defendant* would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant *reasonably demonstrated to counsel that he was interested in appealing.* (Emphasis added.)

*Id.* at 528 U.S. at 471, 120 S.Ct. at 1031, 145 L.Ed.2d at 997.

Although Yustas admitted (contrary to the trial court's finding) that he did not consult with Phon specifically about an appeal after Phon was sentenced, we believe that the criteria articulated in *Roe* apply. Because Phon pled guilty, his putative appeal would have been confined to errors—if any—that may have occurred during the sentencing hearing. Phon has failed to identify any nonfrivolous grounds for appeal to alert trial counsel that Phon would want to appeal. On the contrary, trial counsel had every reason to believe that Phon would not want to appeal, correctly reasoning that if an appeal were successful, Phon would again be susceptible to the imposition of the death penalty. *See Commonwealth v. Eldred,* Ky., 973 S.W.2d 43 (1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999).

Thus, the record supports the finding of the trial court that Yustas might reasonably have believed that Phon did not want to press an appeal. Yustas testified that he had consulted with Phon after the jury's verdict and advised him of the danger in pursuing post-conviction relief in general. Yustas testified that he left his last meeting with Phon with an understanding that Phon did not want to jeopardize his life by having his sentence set aside for any reason. Phon has failed to establish that he expressed to counsel a desire to appeal-thus failing to satisfy both *Roe* and *Strickland.*

The judgment of the Warren Circuit Court is affirmed.

All concur.