**Jerry Wayne BLADES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000187–MR.

Supreme Court of Kentucky.

May 19, 2011.

---

7. He arrived at his parents' house minutes after the shooting.

V. Gene Lewter, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, David Bryan Abner, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

A McCracken Circuit Court jury found Appellant, Jerry Wayne Blades, guilty of complicity to manufacture methamphetamine, first-degree possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. The jury also found him to be a first-degree persistent felony offender (PFO). For these crimes, Appellant received a forty year prison sentence. He now appeals as a matter of right, Ky. Const. § 110(2)(b), alleging that the trial court erred by refusing to suppress all evidence discovered via a warrantless hotel room search and by failing to enter a directed verdict.

## I. *Background*

On March 23, 2009, Deputy Sheriff Tom Crabtree stopped a vehicle driven by Tonya Brokaw. Upon determining that the vehicle was uninsured, the officer obtained consent from Brokaw to search it. During his search, Deputy Sheriff Crabtree found two marijuana joints and two methamphetamine smoking tubes in a Carhartt bag. Appellant, who was the passenger, admitted ownership and was arrested. Police also discovered a dietary supplement used to increase the volume of methamphetamine and several other items used to manufacture methamphetamine.

Mark Vallelunga, another deputy sheriff, arrived on the scene and assisted with the search, finding blister packs of pseudoephedrine and a hotel room key in the glove compartment. Hotel management subsequently allowed Vallelunga to search the room formerly occupied by Brokaw and Appellant without a warrant, wherein he discovered various items, including a coffee grinder with a white powdery substance inside a maroon sock cap, lithium batteries, and a Trezadone bottle with Brokaw's name on it containing small pieces of aluminum foil and a brillo pad. He also found driver's licenses for both Appellant and Brokaw, a Lowe's receipt, and two-receipts from Wal–Mart, one of which showed a purchase of camouflage olive, brown, and black paint cans. Finally, the search yielded Appellant's federal tax return, registration for a boat renewal decal, and a boat certificate.

Based on evidence uncovered during these searches, Appellant was convicted and received a prison sentence. This appeal followed.

## II. *Analysis*

### A. **Validity of Hotel Room Search**

Appellant argues that the trial court erred by refusing to suppress all evidence found via a warrantless search of his hotel room. When reviewing an order denying a motion to suppress, we consider the trial court's findings of fact "conclusive" if they are "supported by substantial evidence." RCr 9.78. "Using those facts [if supported], the reviewing court then conducts a *de novo* review of the trial court's application of the law to those facts to determine whether the decision is correct as a matter of law." *Commonwealth v. Jones,* 217 S.W.3d 190, 193 (Ky.2006).

■ As we must with all suppression issues, we begin by noting that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, Fourth Amendment protection applies only to areas searched wherein the defendant possesses a "reasonable expectation of privacy." *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

■ The United States Supreme Court established that guests enjoy a reasonable expectation of privacy in hotel rooms. *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) ("[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."). However, "once a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any article therein of which the hotel lawfully takes possession." *United States v. Allen,* 106 F.3d 695, 699 (6th Cir.1997) (citations omitted) (internal quotations omitted).

Appellant contends that his arrest prior to check-out prevented him from returning to his hotel room to either remove his belongings or pay to extend his stay. As a result, he argues that the police should be required to obtain a search warrant for his room.

The Commonwealth responds that Appellant no longer had any privacy expectation in the hotel room after the checkout time expired. According to the Common-

wealth, to hold otherwise would punish the police for properly discharging their duty and reward Appellant for his illegal conduct. The Commonwealth offers *United States v. Croft,* 429 F.2d 884, 887 (10th Cir.1970), in which the federal circuit court flatly rejected the appellant's argument that "the expiration of the rental period should not control ... because his arrest prior to check-out time prevented him from returning to the motel and perhaps extending the rental period." We agree.

In *Croft,* the appellant rented a motel room on July 8, 1969 for two days and was then arrested on the morning of July 10. *Id.* at 886. Upon discovering a room key in the vehicle, the local county attorney and county sheriff were permitted by the owner to search the room shortly after the rental period expired at noon, wherein they found personal effects and a cardboard box containing a check protector. *Id.* at 886–887. Because the search was conducted after expiration of the agreed rental period, the federal circuit held that there was no invasion of the appellant's right of privacy, reasoning that "it was defendant's own conduct that prevented his return to the motel." *Id.* at 887.

Here, Deputy Sheriff Crabtree arrested Appellant upon discovering two marijuana joints and two methamphetamine smoking tubes in a Carhartt bag in the backseat of a vehicle driven by Tonya Brokaw sometime prior to 9:00 a.m. on March 23, 2009. Deputy Sheriff Vallelunga then found a hotel room key in the glove compartment. After "lunch-time," hotel management allowed Vallelunga to search the room without a warrant, as the checkout time had elapsed,[1] as well as because the manager

---

1. It is unclear whether the hotel followed a precise checkout time. Deputy Sheriff Vallelunga testified that the normal checkout time fell between 9:00 and 10:00 a.m. Nonethe-

less, the hotel manager told Deputy Sheriff Vallelunga that the rental period expired because the occupants were past checkout time

considered the items abandoned.[2]

We follow the federal precedent established by *Croft* and thus hold that Appellant did not enjoy a "reasonable expectation of privacy" in the hotel room because the search was conducted after the checkout time elapsed. While Appellant's concerns might merit closer examination had evidence shown that police detained him primarily to induce expiration of the rental period, we emphasize that such is not the case here.[3] We decline Appellant's invitation to require police to obtain a search warrant every time an arrest potentially inhibits a guest from returning and extending his or her rental period. While the Fourth Amendment protects against unreasonable searches and seizures, it does not countenance a ridiculous game of cat-and-mouse between police and criminals.

Because the expiration of the agreed rental period dissolved Appellant's reasonable privacy expectation, we affirm his conviction.

## B. Sufficiency of Proof Regarding Persistent Felony Offender Status

Appellant next argues that he was denied due process because the Commonwealth failed to prove that he was a first-degree PFO. As a result, Appellant posits that the trial court erred by failing to enter a directed verdict. Conceding that this issue was unpreserved, Appellant requests palpable error review pursuant to RCr 10.26.[4]

The Commonwealth responds that it sufficiently proved that Appellant was a first-degree PFO. Specifically, the Commonwealth directs our attention to the Court of Appeal's decision in *Williams v. Commonwealth*, 639 S.W.2d 788 (Ky.App.1982) to support its argument that Appellant's felony conviction for driving a motor vehicle with a suspended license and subsequent conviction for fleeing or evading police sufficiently prove his first-degree PFO status. We agree.

To be deemed a first-degree PFO, a person must, among other things, have been convicted of two previous felonies. KRS 532.080(3). KRS 532.080(4) outlines

and had not secured the room for the next night.

2. Appellant belabors the issue of "abandonment" in his briefs, presumably because the trial court concluded that the property was abandoned, in addition to concluding that Appellant lost his privacy interest in both the room and its contents. However, this case can simply be resolved by determining whether Appellant enjoyed a "reasonable expectation of privacy" in the hotel room. *United States v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987) (explaining that a guest does not have a reasonable expectation of privacy upon expiration or termination of the rental period "even when the accused retains significant property interests in the seized item or place."). We note that, unlike the circumstances in *United States v. Cowan*, 396 F.2d 83 (2d Cir.1968) or *Rahme*, hotel management did not take possession of any luggage belonging to Appellant preceding the room search conducted by Deputy Sheriff Mark Vallelunga.

3. *See Rahme*, 813 F.2d at 35 ("Certainly there is no contention here that the DEA agents, who had ample probable cause for the arrest, had held Rahme in custody in order to undertake a warrantless search.").

4. RCr 10.26 reads:

   A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

the methodology used to evaluate whether an individual has been convicted of two previous felonies:

> For the purpose of determining whether a person has two (2) or more previous felony convictions, two (2) or more convictions of crime for which that person served concurrent or uninterrupted consecutive terms of imprisonment shall be deemed to be only one (1) conviction, unless one (1) of the convictions was for an offense committed while that person was imprisoned.

■■■■ In *Williams,* the appellant was released on parole after being convicted of and imprisoned for four counts of forgery. 639 S.W.2d at 789. While on parole, he was convicted of theft by unlawful taking and sentenced to four years' imprisonment. *Id.* The Court of Appeals aptly rejected his interpretation of KRS 532.080(4) [5] that would require two or more convictions to be treated as one even when prison time has been served after the first conviction and the second crime is committed while on parole from the first conviction:

> Appellant's suggested interpretation of KRS 532.080(4) would erode the purpose of the statute. Without analyzing the entire history and purposes of the statute, it is enough to say that the statute is designed to strengthen the Commonwealth's attempts at rehabilitation of convicted persons. Greater penalties are sanctioned for those persons who, after serving a prison term for a conviction, demonstrate the futility of their rehabilitation by committing other crimes after their release. *The concurrent sentence break is provided only to those who may have committed more than one crime but received their sentences for these crimes prior to serving any time in prison.*

> . . . .

> It is clear from the wording of the statute and the Commentary thereto that a person who, in appellant's situation, serves time in prison for a felony, is released on parole, commits another crime and is resentenced to prison, that upon his release again and third conviction, he has two prior felonies for purposes of a persistent felony offender charge. That is, the rehabilitative efforts on his first conviction failed, the rehabilitative efforts on his second conviction failed, and he is, under the statute, a persistent felony offender in the first degree upon receiving his third conviction.

*Id.* at 790 (emphasis added). We adopt this reasoning.

In this case, the Commonwealth showed that Appellant was sentenced for a period of five years' imprisonment on December 20, 1999 for driving a motor vehicle with a license suspended for driving under the influence.[6] Appellant was subsequently sentenced for fleeing or evading police, an act committed outside of the prison, on

---

5. Appellant believes that the Court of Appeals interpretation has no application because *Williams* dealt with an earlier iteration of KRS 532.080(4), which required that a person be sentenced to prison, rather than probation, before his conviction could be invoked for PFO purposes. *See Commonwealth v. Hinton,* 678 S.W.2d 388, 390 (Ky.1984) (stating that the amendments to KRS 532.080 "did away with the requirement for actual imprisonment and directed that convictions which resulted in probation, parole, etc., should be included in prior convictions"). We fail to understand how the amendments fundamentally alter the Court of Appeals analysis in *Williams.*

6. Appellant received a deferred sentence on December 21, 1998 for driving with a suspended license. Appellant was later sentenced on December 20, 1999, as he failed to adhere to the conditions of deferment.

February 21, 2002. Appellant's previous convictions thus demonstrated that he was a first-degree PFO.

Although we agree with the Commonwealth that the trial court did not err by failing to enter a directed verdict because Appellant was convicted of two previous felonies, we pause to further explain why the "concurrent sentence break" does not apply to Appellant.

Much consternation between Appellant and the Commonwealth derives from the February 2, 2004 Order wherein the trial court stated that the judgment for case 01–CR–00059[7] was in error "when it did not make defendant's sentence concurrent with that in 98–CR–00057,[8] or did not reflect in 98–CR–00057 that defendant would not serve any more time on that charge." The trial court went on to "amend[ ] its Judgment in 01–CR–00059 to sentence defendant to a 5 year sentence which is to run concurrent with any other sentences which he may serving out of the Marshall Circuit Court."

Assuming that any other sentence from Marshall Circuit Court refers to the driving a motor vehicle with a suspended license charge, Appellant posits that it is "perfectly clear" that the two sentences for driving with a suspended license and fleeing or evading police ran concurrently. This is irrelevant. Again, the "concurrent sentence break" does not apply to individuals who commit a felonious act, receive a sentence, and then subsequently commit another felonious act and receive another sentence. We will not subvert the rehabilitative purpose of KRS 532.080 as outlined by the Court of Appeals in *Williams* by interpreting the statute in an absurd manner which is necessary to sustain Appellant's argument. *See Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775, 785 (Ky. 2008) (stating that "[w]e have often said that statutes will not be given [such a] reading where to do so would lead to an absurd or unreasonable conclusion.") (internal citations omitted).

### III. *Conclusion*

For the foregoing reasons, Appellant's convictions and sentences are affirmed.

All sitting. All concur.

---

7. Case 01–CR–00059 concerned the fleeing or evading police charge.

8. Case 98–CR–00057 concerned the driving a motor vehicle with a license suspended for driving under the influence charge.