RENDERED: JANUARY 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1306-MR


RONALD GLYNN TRIPLETT                                APPELLANT


                APPEAL FROM MONTGOMERY CIRCUIT COURT
v.                 HONORABLE ELIZABETH DAVIS,[1] JUDGE
                         ACTION NO. 17-CR-00116


COMMONWEALTH OF KENTUCKY                     APPELLEE


AND


NO. 2023-CA-1307-MR


RONALD GLYNN TRIPLETT                                APPELLANT


                APPEAL FROM MONTGOMERY CIRCUIT COURT
                  HONORABLE ELIZABETH DAVIS, JUDGE
                         ACTION NO. 16-CR-00164


COMMONWEALTH OF KENTUCKY                     APPELLEE

---

[1] Honorable William E. Lane was the presiding judge of the 21st Judicial Circuit, Division 1, for these cases and denied the motion now subject to these appeals. Honorable Elizabeth Davis is now the judge presiding in Division 1 of the 21st Judicial Circuit.

<u>OPINION AFFIRMING IN PART,</u>
<u>VACATING IN PART, AND REMANDING</u>

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND TAYLOR, JUDGES.

EASTON, JUDGE:  Appellant Ronald Glynn Triplett ("Triplett") appeals from an

Order of the Montgomery Circuit Court denying, without an evidentiary hearing,

his RCr[2] 11.42 motion.  Triplett alleges his trial counsel was ineffective by failing

to communicate a favorable plea offer to him, by allowing a suppression hearing to

proceed without Triplett's presence, by failing to investigate exculpatory evidence,

and by coercing him to enter an open guilty plea with jury sentencing.  Because

Triplett was entitled to an evidentiary hearing on his allegation that he was not

informed of a favorable plea offer, we vacate only that portion of the Order and

remand for a hearing limited to that question only.

**FACTUAL AND PROCEDURAL HISTORY**

The facts leading to Triplett's conviction were summarized by the

Kentucky Supreme Court in his direct appeal:

> In January 2019, Triplett entered a conditional
> guilty plea in Montgomery Circuit Court to all charges
> contained in 16-CR-00164 (one count each of first-
> degree rape, first-degree sodomy, kidnapping, and first-
> degree criminal possession of a forged instrument) and
> 17-CR-00116 (one count first-degree rape), reserving the

---

[2] Kentucky Rules of Criminal Procedure.

right to appeal the circuit court's pretrial denial of his motion to suppress evidence. The Commonwealth and Triplett requested jury sentencing. The jury heard the following evidence.

In late July 2016, J.B. was walking along a Mount Sterling, Kentucky street. A man, later identified as Ronald Triplett, driving a black Cadillac Escalade, pulled up beside her and asked if she needed a ride. Triplett told J.B. he would pay her to get inside his vehicle. J.B. declined. Triplett drove away, and J.B. continued to walk. Triplett later walked up behind her, put a hand over her mouth, and forcibly took her through a wooded area back to the Escalade.

Triplett drove J.B. to a building and forced her up a flight of stairs to a door that had multiple locks on both the inside and outside. The apartment inside contained a bed and J.B. saw a gun in the apartment. Triplett raped J.B. vaginally and anally. He forced her to perform oral sex on him and he also performed oral sex on her. Afterward, Triplett dropped J.B. off in the area where she had been walking. J.B. called 911 and was able to give a partial license plate number, described her assailant, and when an officer arrived, showed him the building in which Triplett raped and sodomized her. The officer transported J.B. to the local hospital and the medical staff examined her for sexual assault.

The police determined Triplett was associated with the building and discovered he owned a black Escalade. The partial license plate number given by J.B. matched the first four numbers of Triplett's vehicle. When the police executed a search warrant for the building, they found an apartment inside and, as described by J.B., the door had multiple latches and locks on both sides. The police discovered surveillance equipment inside. The police also found a fake but realistic looking handgun, a hidden camera, handcuffs, ankle shackles, a strap-on dildo, 15 counterfeit $100 bills, and latex gloves. The

police contacted the Bureau of Alcohol, Tobacco, and Firearms (ATF) and requested its electronic crime branch examine the electronic equipment found in the building. The police sought an arrest warrant for Triplett and an officer was dispatched to Triplett's home.

Mrs. Triplett told the police that her husband had been gone for about three days and she had not seen him. She said Triplett told her he needed to come up with some money for an attorney because after picking up a girl and having sex with her, the girl said she would tell authorities he raped her if he did not give her money. The police tracked Triplett to a hotel room in Livonia, Michigan. Livonia police officers arrested Triplett in the hotel parking lot. The officers also took possession of the electronic equipment, computers, jump drives, videos, and discs in Triplett's hotel room. Kentucky authorities obtained a search warrant and retrieved the items from the Michigan authorities upon extraditing Triplett back to Kentucky.

One of the items seized from the hotel room was a video of the sexual assault of J.B. Portions of that video were later shown to the jury.

After Triplett was returned to Kentucky, the police interviewed him. Triplett admitted he had engaged in sexual acts with J.B. but maintained the acts were consensual; he declined to elaborate. Triplett also disclosed details about his prior criminal history. The audio-taped interview was played for the jury.

Besides the video of J.B.'s sexual assault, the ATF officers discovered another video that had been made in the same building. The video showed Triplett having sex with an unconscious woman with a distinctive tattoo. The police were eventually able to identify the woman as S.E. When S.E. was shown the video, she confirmed she was the woman in the video, but she had no recollection of what had occurred when Triplett raped her.

-4-

Discussing that time period, S.E. said she woke up the next morning behind a grocery store and had pain and blood in her groin area but did not know what had happened. A portion of the video depicting S.E.'s sexual assault was played for the jury.

J.B. and S.E. read victim impact statements to the jury. Triplett testified in his own defense, and his wife also testified on his behalf.

The jury recommended Triplett serve twenty years for the rape of S.E.; twenty years for the rape of J.B.; twenty years for the sodomy of J.B.; twenty years for the kidnapping of J.B.; and five years for the criminal possession of a forged instrument. The jury further recommended that all sentences run consecutively to each other for a total prison sentence of eighty-five years.

After the sentencing recommendation but prior to final sentencing, Triplett moved to withdraw his guilty plea. The circuit court conducted an evidentiary hearing and then denied the motion. The circuit court imposed the jury's recommended sentence of eighty-five years, but subsequently amended Triplett's sentence to seventy years in prison.

*Triplett v. Commonwealth*, No. 2019-SC-0331-MR, 2020 WL 7396285, at *1-2

(Ky. Dec. 17, 2020). After specifically addressing Triplett's complaints about the

denial of his motions to suppress and to withdraw his guilty plea, the Kentucky

Supreme Court affirmed Triplett's conviction.

In September 2023, Triplett filed a *pro se* Motion to Vacate Judgment

and Sentence Pursuant to RCr 11.42. The Commonwealth filed a response, and the

circuit court denied Triplett's motion without a hearing. The circuit court's order,

dated October 5, 2023, summarily stated that a hearing had already occurred where the issues were heard and decided, presumedly referring to the hearings on Triplett's motions to suppress and to withdraw his guilty plea. The circuit court made no mention of the alleged plea offer. This appeal follows. Further facts will be discussed as they become relevant.

## STANDARD OF REVIEW

The standards which measure ineffective assistance of counsel are set out in the United States Supreme Court case of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). First, the defendant must show that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. *Id.* at 687, 104 S. Ct. at 2064. Second, the defendant must show that the counsel's deficiency prejudiced the defense by depriving the defendant of a fair trial, a trial whose result is reliable. *Id.*

"Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory. *Id.* "A defendant is not guaranteed errorless counsel, or counsel ajudged

ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *McQueen v. Commonwealth*, 949 S.W.2d 70, 71 (Ky. 1997).

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*

A trial court's denial of an RCr 11.42 motion is reviewed for an abuse of discretion. *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). An RCr 11.42 motion is limited to issues that were not and could not be raised on direct appeal. *Teague*, *supra*, at 633.

## ANALYSIS

Triplett claims his trial counsel rendered ineffective assistance of counsel in four ways. First, he argues his initial counsel failed to communicate an offer for a favorable plea bargain to him. Next, he argues his counsel was ineffective by allowing his suppression hearing to proceed without his presence.

Triplett generally claims his counsel failed to investigate exculpatory evidence. Finally, he asserts his trial counsel coerced him into accepting a "blind" plea bargain with jury sentencing.

To determine if an evidentiary hearing is warranted, "[o]ur review is confined to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Osborne v. Commonwealth*, 992 S.W.2d 860, 864 (Ky. App. 1998) (citing *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967)).

Triplett first argues his initial appointed counsel ("Whisman") with the Department of Public Advocacy failed to communicate a favorable plea offer to him. Triplett claims that, after the finality of his case, he discovered the Commonwealth had made an offer on both cases in May of 2017. He says he was not informed of this plea offer. He claims to have discovered this offer after he was finally able to obtain his file from counsel, which included emails between Whisman and the Commonwealth.

Triplett specifically directs our attention to an email dated May 31, 2017, which does indicate that an offer was made to Whisman. The email indicates it had two attachments, which are not provided with Triplett's motion. Triplett claims this offer was for 13 years, which the record does not confirm nor refute.

This record includes over twenty recorded court appearances. We have examined all of them, noting that one hearing appears to be missing[3] and some others are incomplete.[4] We were able to review the hearing on May 26, 2017. Whisman indicates that she had received information from the Commonwealth and would be meeting with Triplett at the jail to discuss his cases. The offer email followed less than a week later. By the next court appearance in July, Whisman had been discharged. She was replaced by a retained attorney ("Carman"). Neither the hearing before the email referring to an offer nor the one afterward contains any mention of any offer.

During the hearing on the motion to withdraw the guilty plea on May 9, 2019, Whisman was again representing Triplett, and she questioned Carman about plea negotiations. He recalled an offer of 25 years communicated to him as counsel which Triplett rejected. There was no mention of any offer for thirteen years communicated to Whisman during this hearing.

---

[3] At the final pretrial hearing on January 24, 2018, at which the open guilty plea was taken, the court repeatedly referred to discussions occurring on the previous day, but the record has no recording for that prior day. We are thus unable to determine if prior guilty plea offers were part of these discussions.

[4] On at least three occasions, the DVD files for these cases consist of the first few seconds when an attorney begins to address the case, but then the recording ends. We were unable to find where else on the provided discs the rest of the hearings might have been located. From the context and timeframe of these hearings, it appears unlikely that the prior offer would have been discussed.

"A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). "In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012).

An offer of thirteen years is obviously much less than the 70-year sentence Triplett received. We are unable to tell from the record if such an offer was, in fact, conveyed by the Commonwealth to Whisman, although we have a record that some offer was made. The record does not show one way or the other whether Whisman discussed whatever that offer was with Triplett or, if she did, whether Triplett rejected it. There is also a suggestion of a counteroffer which Triplett says he knew nothing about.

"The trial judge may not simply disbelieve factual allegations in the absence of evidence in the record refuting them." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452-53 (Ky. 2001). A criminal defendant is not required to prove the allegations in his motion, but he is entitled to a hearing if the record does not conclusively disprove his allegations. *Id.* at 456. Therefore, Triplett is entitled to a hearing to determine if he received ineffective assistance from counsel which led to his inability to accept a favorable plea bargain.

Triplett next argues he received ineffective assistance of counsel when his attorney consented to the suppression hearing being conducted in Triplett's absence. Triplett had filed a motion to suppress all evidence that had been recovered from his hotel room in Michigan, where he was arrested. This evidence included the videos of Triplett raping both victims.

A suppression hearing took place on January 30, 2018. While a transport order had been entered for Triplett to be brought to the hearing, for reasons not entirely clear from the record, Triplett was not transported from where he was incarcerated. Triplett had been moved to different facilities due to his claims of medical needs. Triplett's counsel advised the circuit court that the hearing could proceed without Triplett's presence.

Significantly, counsel and the circuit court agreed that the record would be left open so that Triplett could testify or offer other evidence later. On

February 23, 2018, Triplett was standing next to his attorney Carman in court. Carman said that nothing further was needed for the suppression motion. Triplett does not react to this and said nothing. A briefing schedule was agreed upon.

The circuit court ultimately denied the motion to suppress, and this denial was an assertion of error in Triplett's direct appeal. The Kentucky Supreme Court determined that the circuit court's finding that Triplett had consented to the seizure of the items in the hotel room to avoid them being lost or stolen was not a clearly erroneous finding of fact.

RCr 8.28(1) states that a "defendant shall be present at the arraignment, at every critical stage of the trial . . . ." "The United States Supreme Court has explained that a defendant has a right to be present 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . [and it] is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Watkins v. Commonwealth*, 105 S.W.3d 449, 452-53 (Ky. 2003) (citing *Snyder v. Massachusetts*, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).

"In determining whether a stage is critical, [t]he appropriate question is whether there has been any interference with the defendant's opportunity for effective cross-examination. The U.S. Supreme Court has indicated that not all constitutional errors automatically call for a reversal. The Court recognized that

-12-

before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Cantrell v. Commonwealth*, 288 S.W.3d 291, 297 (Ky. 2009) (internal quotation marks and citations omitted).

"Under the Due Process Clause, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure, and this can include a suppression hearing. Nevertheless, a defendant's presence is not required if the court can decide the suppression motion as a matter of law." *United States v. Law*, 528 F.3d 888, 904 (D.C. Cir. 2008) (internal citations and quotations omitted). *See also Caudill v. Commonwealth*, 120 S.W.3d 635, 652 (Ky. 2003).

The right to be present at every critical stage of the trial is, like many rights, subject to waiver. *Fugate v. Commonwealth*, 62 S.W.3d 15, 19 (Ky. 2001). In this instance, Triplett's counsel waived his right to be present at the suppression hearing. An attorney can waive that right. *Id.* Triplett claims that he did not wish to waive his right to be present at the suppression hearing, and he states his attorney was aware that he wanted to be there. The question then becomes one of ineffective assistance of counsel.

Triplett must offer something to show prejudice caused by his absence. Triplett suggests that he would have been able to direct his attorney to

cross-examine the Michigan witness about a supposed conversation Triplett had with the Michigan police in which he had agreed to turn himself in at a later time. Instead, according to Triplett, the police came a few hours later like a swat team to arrest him. There is no evidence that any such thing happened.

The Michigan authorities were under no obligation to wait until a time convenient for Triplett to arrest him. They were not required to give Triplett an opportunity to destroy evidence before he voluntarily turned himself in. Triplett then offers nothing which might have made his appearance at the suppression hearing a result-altering circumstance. Triplett was not prejudiced by his absence, especially when he had a later opportunity to add evidence for the circuit court's consideration.

Triplett argues this failure to ensure he was present for the suppression hearing is a structural error for which the harmless error analysis does not apply, citing *United States v. Hamilton*, 391 F.3d 1066 (9th Cir. 2004). However, the facts here are distinguishable from those in *Hamilton*. While the court in *Hamilton* did determine a suppression hearing was a critical stage of the case in which a structural error occurred, both Hamilton *and his counsel* were absent during a portion of the suppression hearing. The court determined it was the absence of counsel during a critical stage that created a structural error in which prejudice is presumed. *Id.* at 1070.

A defendant's absence at a critical stage is subject to harmless error analysis. *Truss v. Commonwealth*, 560 S.W.3d 865, 870 (Ky. 2018). *See also Harris v. Commonwealth*, 285 S.W.2d 489, 493 (Ky. 1955) (citing *Hoskins v. Commonwealth*, 221 S.W. 230 (Ky. 1920)). For a constitutional error to be harmless, it must be harmless beyond a reasonable doubt. *Truss*, 560 S.W.3d at 870. "[A]n error may not be deemed harmless beyond a reasonable doubt unless there is no reasonable possibility that it contributed to the conviction." *Id.* (internal quotation marks and citations omitted).

The Kentucky Supreme Court has already determined that the motion to suppress was properly denied. That is the law of this case. Having rejected Triplett's offered argument on what he might have added by his presence at the suppression hearing, we need not revisit the analysis of the Kentucky Supreme Court about the suppression decision on the direct appeal. For completeness, we will further discuss it to show how Triplett's offered addition to the evidence would have changed nothing. Constitutional seizure of the evidence was inevitable.

Triplett was arrested in a hotel room in Livonia, Michigan. At the time of his arrest, a clerk with the hotel asked the Michigan officers to evict Triplett. This clerk gave the officers access to Triplett's room. Items located in his hotel room, including laptops, jump drives, disks, and a cell phone, were

-15-

inventoried and taken to the police department's evidence room. The items were not analyzed by the Livonia police. The detective who testified at the suppression hearing stated that Triplett indicated he was concerned about his personal belongings being left in the hotel room and subsequently lost or stolen. Both the circuit court and the Kentucky Supreme Court in Triplett's direct appeal determined that Triplett had consented to his belongings being seized if not searched by the Livonia police. Triplett claims he did not consent. Had his attorney not waived his appearance at the suppression hearing, Triplett would have testified about his lack of consent.

While consent is a valid exception to the Fourth Amendment's warrant requirement, there is another exception present under the circumstances of this case. "Fourth Amendment protection applies only to areas searched wherein the defendant possesses a 'reasonable expectation of privacy.'" *Blades v. Commonwealth*, 339 S.W.3d 450, 453 (Ky. 2011) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633 (1980)). Triplett is correct that guests enjoy a reasonable expectation of privacy in hotel rooms. *Stoner v. California*, 376 U.S. 483, 490, 84 S. Ct. 889, 893, 11 L. Ed. 2d 856 (1964). "However, 'once a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any article therein of which the hotel lawfully takes possession.'"

*Blades*, *supra*, at 453 (citing *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997)).

In this case, the hotel manager asked the Livonia police to evict Triplett, which ended his lawful possession of the hotel room. Triplett was to be arrested on a valid arrest warrant, giving the hotel manager a valid reason to evict him from the hotel. Once the hotel manager took possession of the room, Triplett "could no longer assert a legitimate privacy interest in its contents." *Allen*, 106 F.3d at 699.

Because Triplett no longer had a privacy interest in the hotel room, the Livonia police did not unconstitutionally seize the contents of the room. Triplett's consent, or lack thereof, was of no consequence. His testimony at the suppression hearing would not have made any difference to the outcome, and therefore his absence, was harmless beyond a reasonable doubt. We note the further inevitability of the discovery of the evidence because of Triplett's lawful arrest while at the hotel. The evidence would have been inventoried and then eventually analyzed, which in this case was done after another search warrant was obtained.

Triplett's third allegation of ineffective assistance of counsel is that his trial counsel failed to investigate exculpatory evidence. Triplett believes there may have been security cameras at a nearby pawn shop that might have shown J.B.

asking Triplett for a ride and getting into his vehicle voluntarily, which would have contradicted her statement to police that she was forced into the vehicle at gunpoint. Triplett also thinks that similar surveillance footage and his bank records would have shown that he had breakfast with S.E. the morning after Triplett raped her.

RCr 11.42 requires specification and offered facts to support it. It is not enough to speculate what might have been out there which might have helped. For example, Triplett does not explain how a receipt from a McDonalds restaurant documented in his bank records for his credit card would identify S.E. as being a person with Triplett for breakfast the morning after the rape. Triplett provided no evidence of the existence of any relevant camera footage. Triplett offers nothing to show, such as some confirming statement from the pawn shop, that such camera footage actually showing where Triplett had been existed when Carman was investigating, or still exists, or ever existed.

Triplett also names two individuals, by first name only, who might have testified they saw Triplett and S.E. together the night he assaulted her. Triplett gives insufficient information to find these people and offers no affidavits from them to support his motion. Triplett claims this evidence would have cast doubt on the statements made by S.E.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, *supra*, 466 U.S. at 691, 104 S. Ct. at 2066. However, "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. In this regard, [t]he defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008) (internal quotation marks omitted) (quoting *Strickland*, *supra*, at 694, 104 S. Ct. at 2068).

Triplett is unable to show prejudice. First these suggestions of evidence are not consistent with Triplett's admissions and the contents of hours of disturbing videotape. Even if what Triplett alleges is true, it does not render his convictions unreliable. Regarding S.E., she testified she does not remember what occurred that night. Even if she had been drinking earlier in the evening with Triplett and initially left with him willingly, it does not negate her being then raped while unconscious as recorded at length. Likewise, even if S.E. did have breakfast

with Triplett the next morning, that would not undo the truly disturbing recorded events that the jury saw.

As for J.B., again, the jury saw the video of the rape taking place. The jury also heard statements made by J.B. on the video that indicated she was not there willingly. The horrific and overwhelming evidence sustains Triplett's convictions on all counts. Triplett's non-specific offer of some other evidence which Carman might have found does not change this.

The jury was shown only about ten minutes of video per victim, and the jury then gave Triplett the maximum sentences allowed. With the nature of the existing evidence, the circuit court did not err in failing to grant a hearing on the alleged failure by trial counsel to investigate further. Triplett is unable to show prejudice.

Triplett's final allegation of ineffective assistance is that his trial counsel coerced him into signing a "blind" plea deal with jury sentencing. This issue was previously heard by the circuit court in Triplett's motion to withdraw his guilty plea. The circuit court denied Triplett's motion to withdraw because his plea was made voluntarily, freely, intelligently, and knowingly.

An extensive plea colloquy was conducted at the taking of Triplett's guilty plea, and at no point did he mention the distraction of any medical or medication issues, including abscessed teeth, which, even if bothersome, at no time

prevented Triplett from entering a voluntary and knowing plea. It was not until almost two months after the jury sentencing that Triplett moved to withdraw his guilty plea. The circuit court found in its Order on Motion to Withdraw Plea that the "timing of this [sic] medical requests seems to [sic] convenient to what is before the Court now."[5]

We agree with the circuit court. Again, Triplett has already had the opportunity to question the validity of his plea, including any overbearing conduct of his attorney, when the Kentucky Supreme Court heard his direct appeal. That Court found the decision not to allow the withdrawal of the plea was valid. That Court discussed the conduct of counsel in its analysis. Again, that prior decision is the law of this case.

Triplett now adds, with no citation to any legal support, that allowing a defendant "to accept a blind conditional guilty plea falls outside the wide range of prevailing professional norms."[6] In fact, there is case law supporting the contrary. *See Phon v. Commonwealth*, 51 S.W.3d 456, 458-59 (Ky. App. 2001). Like the defense counsel in *Phon*, Triplett and his trial counsel made a strategic choice to enter a blind plea with jury sentencing to avoid a jury seeing more

---

[5] Order on Motion to Withdraw Plea, May 22, 2019, Record at Page 602.

[6] Appellant Brief, page 14.

disturbing evidence against the defendant, in this case, the lengthy video footage of the rapes.

Trial counsel made a valid tactical decision to not argue guilt. Counsel stated to the jury that Triplett wished to take responsibility for his actions. Triplett did so himself in his sentencing testimony. The disturbing circumstances of the cases left few tactical options. But a legitimate one was not to argue guilt but rather to argue for an appropriate punishment.

Carman tried to humanize Triplett for the jury. Triplett testified about his age, his military service in Vietnam, his subsequent war-related diagnoses, and his many other health issues, including cancer. The fact that this tactical choice did not have the effect Triplett and his counsel were hoping for does not make the assistance of counsel ineffective. "Conjecture that a different strategy might have proved beneficial is also not sufficient." *Prescott v. Commonwealth*, 572 S.W.3d 913, 921 (Ky. App. 2019).

## CONCLUSION

We conclude Triplett is entitled to an evidentiary hearing limited to his claims regarding the Commonwealth's offer in May of 2017 and the alleged failure of his counsel to convey that offer to him. As to that claim, we VACATE and REMAND for an evidentiary hearing. Otherwise, the order of the Montgomery Circuit Court is AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| J. Ryan Chailland<br>Andrea Reed<br>Frankfort, Kentucky | Russell Coleman<br>Attorney General of Kentucky<br><br>Matthew R. Krygiel<br>Assistant Attorney General<br>Frankfort, Kentucky |